## ADAMS v. ITEN BISCUIT CO.

No. 7984—Opinion Filed Jan. 9, 1917.

(162 Pac. 938.)

(Syllabus by the Court.)

1. **Constitutional Law—Amendment—Workmen's Compensation Law.**

Chapter 246, Sess. Laws 1915, p. 574, known as the "Workmen's Compensation Law," is not an amendment of the Constitution nor does said chapter submit an amendment to the people for adoption by them.

2. **Master and Servant—Workmen's Compensation Law—Constitutionality—Police Power.**

Said chapter 246 of Sess. Laws 1915, which requires all employers engaged in certain hazardous occupations therein enumerated to provide compensation according to certain schedules for all accidental injuries without regard to fault upon the part of said em-

ployer arising out of or in the course of employment, and such diseases or infections as may naturally and unavoidably result therefrom, by one of three methods prescribed in the act, and places the supervision and administration thereof under the State Industrial Commission, provides penalties for violations of the act, and abrogates the right of action to recover damages not resulting in death, except a right of action reserved to the State Industrial Commission for the benefit of an injured employe, is within the authority of the Legislature, and the enactment thereof was a legitimate exercise of the police power of the state.

**3. Constitutional Law—Master and Servant — Legislative Powers — Amendment — Workmen's Compensation Law.**

Said chapter does not violate section 1, art. 5, Williams' Ann. Const., which declares that the legislative authority of the state shall be vested in the Legislature, consisting of a Senate and House of Representatives, nor section 36, art. 5, declaring that the authority of the Legislature shall extend to all rightful subjects of legislation, nor sections 1 and 2, art. 24, which prescribe the procedure for amending the Constitution.

**4. Statutes—Subject and Title—Workmen's Compensation Law.**

Neither is said act void because the title thereof does not contain any reference to the provisions making the compensation thereby provided exclusive and abrogating the right of action in the courts by an injured employe to recover damages. The act treats of one general subject, and all of its provisions are properly referable to and cognate therewith.

**5. Constitutional Law—Power of Judiciary —Legislative Encroachment.**

Section 6, art. 2, Williams' Ann. Const., relates to the judiciary, and does not constitute a limitation upon the power of the Legislature to abolish the rules by which heretofore the liability of a master for injuries to his servant was determined, nor the defenses of fellow servants' contributory negligence and assumption of risk.

**6. Constitutional Law — Vested Rights — Rule of Law.**

The citizen has no property in a rule of law, and while rights which have accrued to him under the operation of existing laws and have thereby become vested may not be taken away by a change of the rules, he cannot be heard to complain if the rule is changed before any rights have accrued to him thereunder.

**7. Constitutional Law—Master and Servant —Due Process of Law—Equal Protection of the Laws—Workmen's Compensation Law.**

Said chapter 246 of Sess. Laws 1915 does not deprive an employe, injured after its passage, of property without due process of law, nor does it deprive such employe of the equal protection of the law.

**8. Jury—Trial by Jury—Constitutional Provisions.**

The seventh amendment to the United States Constitution was not intended to guarantee a trial by jury to a litigant in a civil action in the courts of the several states.

**9. Same—Workmen's Compensation Law.**

Const. sec. 19, art. 2, providing that the right of trial by jury shall be and remain inviolate, except as modified by the Constitution itself, means the right as it existed at the time the Constitution was adopted, but said provision does not operate to prevent the Legislature from abrogating the common law right of action for injuries not resulting in death by persons employed in certain hazardous occupations, and substituting therefor the scheme embraced in chapter 246, Sess. Laws 1915, in which the compensation awarded is determined without a trial by jury, where the injury did not occur until after the passage of said act.

**10. Master and Servant—Workmen's Compensation Law—Willful or Intentional Injury.**

Said chapter 246 of Sess. Laws 1915 provides for compensation for all accidental injuries, not resulting in death, whether occurring from the negligence of the employer or not, arising out of or in the course of employment, but does not include willful or intentional injuries inflicted by the employe or resulting from an intent upon the part of the employe to injure himself or another, or for a willful failure to use a guard or other protection against accident, required by statute or furnished pursuant to an order of the state labor commissioner, and for willful injuries inflicted by the employer leaves the employe to his remedy by an action as heretofore.

**11. Same—Injury Arising out of and in Course of Employment.**

The injuries alleged in plaintiff's petition held to be within the purview of the act.

Error from District Court, Oklahoma County; John W. Hayson, Judge.

Action by B. L. Adams against the Iten Biscuit Company, a corporation. Judgment for defendant sustaining demurrer to amended petition, and plaintiff brings error. Judgment affirmed.

J. T. Dortch and Giddings & Lillard, for plaintiff in error.

Everest & Campbell, for defendant in error.

S. P. Freeling, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., amici curiae.

HARDY, J. Plaintiff in error as plaintiff below commenced this action against the defendant in error, defendant below, for damages for personal injuries alleged to have

been occasioned by the negligence of the defendant while in its employment as a baker. On January 22, 1916, an amended petition was filed, to which demurrer was sustained upon the ground that the injuries complained of were covered by the Workmen's Compensation Law, passed at the 1915 session of the Legislature, being chapter 246, p. 574, Sess. Laws 1915. From the judgment sustaining demurrer to his amended petition, plaintiff brings the case here, and urges that the Workmen's Compensation Law is unconstitutional because in conflict with various provisions of the state and federal Constitutions, and that even though valid and constitutional, the act does not cover the injuries alleged in plaintiff's petition to have been received by him. The act is too long to set out in detail, but provides a system of compulsory compensation to injured employes in hazardous industries, and places the administration of the act under a commission therein created, and designated the "State Industrial Commission," and also fixes a schedule of awards and provides penalties for the violation of the act. It requires all employers who are engaged in certain hazardous occupations therein enumerated and defined to secure compensation to their employes for all accidental injuries arising out of or in the course of employment, and such diseases or infections as may naturally and unavoidably result therefrom, by one of three methods, prescribed in the act as follows: (a) By insurance with some stock corporation or mutual association or by exchanging contracts of indemnity or interinsurance under the reasonable regulation of the Industrial Commission providing for and securing the payment of the compensation provided by the act. (b) The employer may, with the approval of the commission, enter into or continue an agreement with his employes to promote a scheme for compensation in lieu of the insurance above mentioned, such compensation to be no less than that prescribed by the act, and not to be variant therefrom as to terms of payment, and provided that where such scheme requires contributions from the employes, the benefits shall be consistent therewith. (c) If the employer shall furnish satisfactory proof of his ability to pay compensation, the commission may, in its discretion, require the deposit with the commission as security an indemnity bond in an amount and kind to be determined by the commission to secure the payment of the compensation provided by the act. The right of action to recover damages for personal injuries not resulting in death arising and occurring in hazardous employments as defined in the act, except a right of action reserved to the State Industrial Commission for the benefit of an injured employe, is abrogated, and

jurisdiction of the courts of the state over such causes, except as to the cause reserved to the State Industrial Commission for the benefit of injured employes, is abolished.

The validity of this legislation is challenged by plaintiff upon the ground that it is not a valid exercise of the legislative power, and that it was beyond the jurisdiction or authority of the Legislature as defined by section 1, art. 5, Const., which declaies that the legislative authority of the state shall be vested in the Legislature, consisting of a Senate and House of Representatives, but reserving to the people themselves the powers of the initiative and referendum, and by article 5, sec. 36, declaring that the authority of the Legislature shall extend to all rightful subjects of legislation, and violates article 24, secs. 1, 2, regulating the procedure for amending the Constitution. That the act was not an amendment to the Constitution, and that it did not submit an amendment to the people for adoption, seems too plain for argument. That the changes made are important and far-reaching cannot be questioned, and while they may appear to be revolutionary, yet such legislation has been enacted in Great Britain and various British colonies and in some of the principal countries of Continental Europe, and at the time this case was submitted had been adopted in 31 states of the Union and in the territories of Alaska and Hawaii. The statutes in the different states vary somewhat from those in Europe and in England, and are different from each other in certain particulars, but all of them are based upon the underlying principle that the proper regulation of such hazardous occupations and the payment of just compensation for injuries received therein is a matter of public concern. Many of the laws are optional, while those in New York, Washington, Montana, California, and this state are compulsory. Numerous decisions in states where the statutes are elective have been rendered which are valuable as giving the history and reasons for such legislation and as illustrating the administration of such laws, but as the objections urged to the act now under consideration are of a similar character to those urged against other compulsory acts, decisions from the states where compulsory legislation has been enacted will be more valuable in determining the questions now presented. Prior to the passage of this act, the remedy afforded was based upon the relation of employer and employe and had for its purpose the redress of private wrongs, and the measure of damages recoverable was intended to be commensurate with the injury suffered. In our modern industrial life, accidents to workmen engaged in various industrial pursuits were all but inevitable,

and their frequent occurrence could not be prevented by legislation, however wisely framed or rigidly enforced, and a remedy was afforded only in cases where fault existed upon the part of or could be imputed to the employer; and where no such fault existed, the loss was borne by the injured employe or by those dependent upon him or by the state at large. The action of the employe was always subject to the defenses of contributory negligence or of assumption of risk, and frequently a recovery was only had after vexatious and costly litigation, involving large economic waste in the expenditure by litigants of large sums of money for counsel fees and other costs incident thereto, with the added burden of taxation necessary to maintain the courts. Often unjust verdicts were rendered, causing much complaint that the practical operation of the law did not obtain the result which it was intended to accomplish. In harmony with the prevailing views on this subject, the Legislature enacted this law, which effects a substantial change in the relations of master and servant to each other and to the public, not based upon the theory of compensation for private wrongs, but in accordance with an enlightened modern public opinion, which demands as simple justice that an employe engaged in one of the enumerated occupations, who has been injured, or in case of death his dependents, shall receive such compensation as will prevent him or them from becoming public charges and enable the minor children of such employe to receive an education and training that will make them self-supporting. By section 7, art. 23, Const., the Legislature is restrained from abrogating the cause of action for injuries resulting in death. Instead of the losses being borne as heretofore, in a great majority of cases, by the injured employe or his dependent ones, it was the belief that such losses should be borne by the industries causing them, or, more accurately speaking, by the consumers of the products of such industries, and that thereby wasteful and unnecessary litigation, with all of its resultant evils, could be eliminated.

Within the last six or seven years more than a score of state Legislatures, and the Congress of the United States, have passed laws creating commissions and have appropriated large sums of money to investigate the economic effect of injuries and deaths of employes upon their wives and children, and others dependent upon them, and upon the public; and as a result of these investigations it has been shown that the remedy under the common and liability laws, as they existed prior to the enactment of legislation of this character, did not afford compensation of any kind to more than 12 per cent. of the cases where employes were injured and in cases where it was paid, on the average, the amount paid did not exceed one-fifth of what was regarded as adequate, and it was further shown that no modification of the common-law remedy by action would materially improve conditions, and that the only way to bring about the desired result was to abandon the common-law action and the rules by which it was administered and substitute a new remedy similar to that which has been generally adopted. The economic results disclosed demonstrate conclusively that the public has an interest in the proper solution of the problem and of the manner in which such hazardous industries are operated, by reason of its right to regulate their effect upon the public welfare. 10 N. C. C. A. p. 1, note.

Is this legislation, then, within the police power of the state? The security of the state and the preservation of the peace and good order of society depends, in its final analysis, upon the power of the state to make and alter its laws in accordance with a sound public policy, and to prescribe regulations to promote the health, peace, morals, education and good order of the people, and every member of society obtains and holds all that he possesses through the aid and under the protection of the law and subject to the power mentioned, else the right of the community to prosper and advance and promote the public weal would be rendered subservient to the enjoyment of private rights Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77; Cooley's Const. Lim. (7th Ed.) 509; State v. Clausen, 65 Wash. 157, 117 Pac. 1101, 37 L. R. A. (N. S.) 466.

The extent and limit of what is known as the police power has been a subject of discussion in the appellate courts in nearly every state in the Union. It is universally conceded, however, to include everything essential to the public safety, health, and morals. Lawton v. Steele, 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385. In Holden v. Hardy, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780, the Supreme Court says:

"This court has not failed to recognize the fact that the law is, to a certain extent, a progressive science; that in some of the states methods of procedure, which at the time the Constitution was adopted were deemed essential to the protection and safety of the people, or to the liberty of the citizen, have been found to be no longer necessary"

—and, after enumerating a number of cases in which fundamental changes have been made in the law, states that:

"While the cardinal principles of justice are immutable, the methods by which justice is administered are subject to constant fluc-

tuation, and that the Constitution of the United States, which is necessarily and to a large extent inflexible and exceedingly difficult of amendment, should not be so construed as to deprive the states of the power to so amend their laws as to make them conform to the wishes of the citizens as they may deem best for the public welfare without bringing them into conflict with the supreme law of the land. Of course, it is impossible to forecast the character or extent of these changes, but in view of the fact that from the day Magna Charta was signed to the present moment, amendments to the structure of the law have been made with increasing frequency, it is impossible to suppose that they will not continue, and the law be forced to adapt itself to new conditions of society, and. particularly, to the new relations between employers and employes, as they arise."

In Noble State Bank v. Haskell et al., 22 Okla. 48, 97 Pac. 590, this court sustained as a valid exercise of the police power the Bank Guaranty Law. Upon appeal to the Supreme Court of the United States, the decision of this court was affirmed, 219 U. S. 104, 31 Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487, and in discussing the extent of the police power, it was there said:

"It may be said in a general way that the police power extends to all the great public needs. Camfield v. United States, 167 U. S. 518, 17 Sup. Ct. 864. 42 L. Ed. 260. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare. Among matters of that sort, probably few would doubt that both usage and preponderant opinion give their sanction to enforcing the primary conditions of successful commerce."

The first Workmen's Compensation Act passed in the United States was the New York act of 1910, c. 674, Laws of that year, which was pronounced unconstitutional by the Court of Appeals of that state in Ives v. South Buffalo R. R. Co., 201 N. Y. 271, 94 N E. 431, 34 L. R. A. (N. S.) 162, Ann. Cas. 1912B, 156, upon the ground that as the statute made the employer liable in cases where he had not been at fault, it was in violation of the federal and state Constitutions, which prohibited a deprivation of liberty and property without due process of law.

The next statute of a compulsory character was Washington act of March 14, 1911 (Session Laws 1911, p. 345), which provided for the creation of an accident fund to which employers in hazardous occupations therein enumerated were required to contribute, out of which fund compensation was paid to injured employes. The constitutionality of this statute was assailed in State v. Clausen, 65

Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, upon the ground that it rendered the employer liable in cases where he was free from fault, and that it took the property of one employer to pay the liabilities of another, and while the court observed that these contentions had a basis in fact, and on first impression constituted a persuasive argument in favor of the objections urged, it declared that the test was not whether it created a liability without a fault, or whether it took the property of one employer to pay the obligations of another, but was whether there was any reasonable ground to believe that the public safety, health, or general welfare was promoted thereby, and, further, that the clause of the Constitution then under consideration was not intended to prevent those reasonable regulations to which all must submit as a condition of remaining members of society, but to prevent the arbitrary exercise of power or undue, unjust, and capricious interference with personal rights. In Cunningham v. Northwestern Improvement Company, 44 Mont. 180, 119 Pac. 554, the general scheme of the Montana act which provided a system of industrial insurance for miners was held to be within the police power of the state, but the act was pronounced unconstitutional because it reserved to the employe his right of action, and consequently did not relieve the employer from liability for the injury. Both the Washington and Montana decisions cited and followed the conclusion of the Supreme Court in Noble State Bank v. Haskell.

The next act was the second New York act (chapter 41, Session Laws 1914), which was upheld in Jensen v. Southern Pacific Company. 215 N. Y. 514, 109 N. E. 600, L. R. A. 1916A, 403. This is a compulsory industrial insurance act, somewhat similar to the Washington act. California Act 1913, p. 279, was sustained in Western Indemnity Co. v. Pillsbury, 170 Cal. 686, 151 Pac. 398, by a divided court, a majority of the Justices holding that the act was constitutional, while Henshaw, J., dissented. The statute of Iowa is optional, but in a discussion thereof by the court in Hunter v. Colfax (Iowa) 154 N. W. 1037, the view was expressed that a compulsory industrial insurance act would not constitute a taking of property without due process of law. All of the decisions sustaining legislation of this character hold to the view that the enactment thereof is within the police power of the state, and with this view we are in accord. An able and instructive article on this subject by Mr. Justice Kane of this court was published in the Yale Law Journal in its issue for March, 1911.

Neither is the act void because the title thereof does not conform to section 57, art.

5, of the Constitution, which requires that every act should embrace but one subject, which shall be clearly expressed in its title. The title is as follows:

- "An act providing for the compulsory compensation of injured employes in hazardous industries, placing the supervision of the act under a commission herein created. Fixing a schedule of awards, and providing penalties for the violation of this act."

Section 57, art. 5, of the Constitution has been repeatedly considered by this court, and the established rule now is that the title to a bill may be general, and need not specify every clause in the statute; it being sufficient if the various provisions are referable to and cognate to the subject expressed. Pond Creek v. Haskell, 21 Okla. 711, 97 Pac. 338; Insurance Company North America v. Welch, 49 Okla. 620, 154 Pac. 48, and cases cited.

The act treats of one general subject, its purpose is one general object, and the title sufficiently expresses that general object, and the various provisions of the act are properly referable thereto. The matters dealt with are of vital importance affecting economic and social questions of a general public nature, and to assure the validity of the legislation against the Constitutional objections urged, it was necessary to make the compensation therein provided exclusive, and to abolish the right of action theretofore existing, and the title of the act was broad enough to include such provision and indicate the legislative intent so to do. In Middleton v Texas Power & Light Co. (Tex.) 185 S. W. 556, the title to the Texas act, which contained no reference to the provision abolishing a right of action in the courts upon the part of employers of a subscriber to the association therein created, was held to express the single general subject thereof, and the act sustained.

After this case was first submitted, the court requested the Attorney General to file briefs and submit oral arguments upon two questions:

(1) "Does section 6, art. 2, Const., guarantee to every person a remedy in the courts of the state for every injury resulting from the wrongful or negligent acts of another?" (2) "Was the purpose of the Act to provide compensation for purely accidental injuries for which there was no remedy without affecting the existing remedy for injuries resulting from the negligence of the employer?"

In compliance with this request, we have been favored with able briefs, and have also had the benefit of an oral argument by the parties hereto. Addressing ourselves to the first question, it is contended that section 6, art. 2, was intended to preserve a right of action in the courts of the state to persons for injuries that may happen in the future, and thereby prevent the Legislature from passing laws that abolish existing remedies for a cause of action recognized by the law at the time the Constitution was adopted, though the injury had not in fact occurred, nor the right of action vested prior to the passage of such aw. The mandate of section 6, art. 2, of the Constitution is:

"The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

That this was a mandate to the judiciary and was not intended as a limitation upon the legislative branch of the government seems clear. Neither do we think it was intended to preserve a particular remedy for given causes of action in any certain court of the state, nor was it intended to deprive the Legislature of the power to abolish remedies for future accruing causes of action (where not otherwise specifically prohibited), or to create new remedies for other wrongs as in its wisdom it might determine. Section 36, art. 5, declares that:

"The authority of the Legislature shall extend to all rightful subjects of legislation."

It was suggested in the oral arguments that the exact language of section 6, art. 2, was not contained in the Constitution of any other state. It is stated in the brief of the Attorney General that, while the exact language employed has not been used elsewhere, this provision in substance and effect has been incorporated into the Constitutions of 38 states of this Union on 77 separate occasions, the first instance being the Bill of Rights of Maryland in 1776. Section 15, art. 13, of the Constitution of Kentucky declares:

"That all courts shall be open, and every person, for an injury done him in his lands, goods, person, or reputation, shall have remedy by the due course of law, and right and justice [shall be] administered without sale, denial, or delay."

This provision, as construed by the Court of Appeals of that state, has been held to relate altogether to the judicial and not the legislative department of the state government, and to prescribe certain general duties for the courts and to lay down general rules for the manner of conducting business therein. Johnson v. Higgins, 3 Metc. (Ky.) 566; Barkley et al. v. Glover et al., 4 Metc. (Ky.) 44. Section 10, art. 2, Constitution of Missouri 1875, is as follows:

"The courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or char-

acter, and that right and justice should be administered without sale, denial or delay."

This provision was construed in Landis v. Campbell, 79 Mo. 433, 49 Am. Rep. 239, where it was held to mean only that for such wrongs as were recognized by the law of the land, the courts should be open and afford a remedy. Sec. 6, art. 3, Constitution of Montana, is as follows:

"Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and that right and justice shall be administered without sale, denial or delay."

But this provision was not an obstacle to the enactment of a compulsory compensation law in that state, although the law was invalid for other reasons. Cunningham v. N. W. Imp. Co., supra.

It may be safely stated as a general rule that the citizen has no property in a rule of law, and that, while rights which have accrued to him under the operation of existing laws and have thereby become vested may not be taken away by a change of the rules, he cannot be heard to complain if the rule is changed before any rights have accrued to him thereunder. Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77; Edwards v. Johnson, 105 Ind. 594, 5 N. E. 716; Bryson v. McCreary, 102 Ind. 1, 1 N. E. 55; Kirby v. Pa. R. Co., 76 Pa. 507; Sawyer v. El Paso & N. E. R. Co., 49 Tex. Civ. App. 106, 108 S. W. 718; Vind Consol. Gold Min. Co. v. Firstbrook, 36 Colo. 498, 86 Pac. 313, 10 Am. Cas. 1108.

In Williams v. City of Galveston, 41 Tex. Civ. App. 63, 90 S. W. 505, a provision of the charter of the city of Galveston, which exempted the city from all liability for injuries caused by any defect of any street, sidewalk, etc., was held not in conflict with Constitution of Texas, art. 1, secs. 13, 19, declaring that every person, for an injury done him, shall have remedy by due process of law, when applied to all injuries accruing after the adoption of the charter, for the reason that a person has no property rights in a rule of law before the accrual of rights under the operation thereof. In Middleton v. Texas Power & Light Company, supra, it was held:

"While vested rights are protected from destruction, except by due process of law, no one has a vested right in the common-law rules affecting the remedy in a servant's action or the defenses of fellow servant, assumed risk, and contributory negligence."

The Constitution of Oregon (art. 1, sec. 10) contained a provision that:

"Every man shall have remedy by due course of law for injury done him in person, property or reputation."

And it was held this did not prevent the repeal of a statute in force at and before the adoption of the Constitution, allowing an action ex delicto against a county. Templeton v. Linn Co., 22 Or. 313, 29 Pac. 795, 15 L. R. A. 730. The same argument was made in Jensen v. Southern Pacific Company, 215 N. Y. 514, 109 N. E. 600, where it was said:

"No one has a vested right under the Constitution to the maintenance of that common-law doctrine, which undoubtedly may be extended or curtailed by the Legislature. No one doubts that the doctrine of assumption of risk and the fellow-servant doctrine, also developed by the courts under different conditions than those now prevailing, may be limited or entirely abrogated by the Legislature. Acts having that effect have been sustained by repeated decisions of this court."

In Munn v. Illinois it was said:

"But a mere common-law regulation of trade or business may be changed by statute. A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away withoue due process; but the law itself, as a rule of conduct, may be changed at the will, or even at the whim, of the Legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances."

To the same effect is the opinion of the Supreme Court in Martin v. Pittsburg and Lake Erie R. Co., 203 U. S. 284, 27 Sup. Ct. 100, 51 L. Ed. 184, 8 Ann. Cas. 87. In that case plaintiff was a mail clerk on a route extending from Cleveland, Ohio, to Pittsburg, Pa., and was injured by derailment of the train in Pennsylvania, resulting from negligence of the crew of a work train leaving open a switch leading to a side track. The company pleaded as one of its defenses a law of Pennsylvania, relieving it from liability. In speaking of this phase of the case it was said:

"If it be conceded, as contended, that the plaintiff in error could have recovered but for the statute, it does not follow that the Legislature of Pennsylvania in preventing a recovery took away a vested right or a right of property. As the accident from which the cause of action is asserted to have arisen occurred long after the passage of the statute, it is difficult to grasp the contention that the statute deprived the plaintiff in error of the rights just stated."

In Northern Pacific Railroad Company v. Meese, 239 U. S. 614, 36 Sup. Ct. 223, 60 L. Ed. 467, the contention was made that because of the construction placed upon the Compensa-

tion Act of Washington by the Supreme Court of that state, the same was in conflict with the equal protection clause of the Fourteenth Amendment. The Supreme Court of Washington had construed the act to abolish all causes of action theretofore existing irrespective of the persons in favor of or against whom such rights might have existed and that the compensation provided by the act was intended to be exclusive of every other remedy. The contention was said to be without merit. Plaintiff here was deprived of no vested right, but the effect of the law was simply to change the common-law rule of liability for accidental injuries, and to substitute a new system of compensation. That the Legislature may regulate or entirely abolish the common-law rules of liability and the defenses of fellow servants and contributory negligence and of assumption of risk is thoroughly established, and no valid reason exists why it may not require compensation to be made to an employe for accidental injuries received in the course of his employment in hazardous occupations, according to a different rule from that prescribed by the common law, and place the supervision of the new plan in the hands of an administrative commission instead of the courts. Cunningham v. N. W. Imp. Co.

The fact that by section 7, art. 23, Const., the Legislature is specifically denied the power to abrogate the right of action for damages resulting in death indicates that the framers of the Constitution had in mind the power to change the rules of the common law, and to abrogate rights of action for damages resulting from injuries received, and intended to expressly prohibit the exercise thereof in cases resulting in death.

Does the act deny to plaintiff the right of trial by jury guaranteed to him by the Constitution? Plaintiff says that it does. The Seventh Amendment to the federal Constitution was not intended to guarantee a trial by jury to a litigant in a civil action in the courts of the several states. Walker v. Sauvinet, 92 U. S. 90, 23 L. Ed. 678; Cunningham v. N. W. Imp. Co., 44 Mont. 180, 119 Pac. 554; State v. Mountain Timber Co., 75 Wash. 581, 135 Pac. 645.

Article 2, sec. 19, providing that the right of trial by jury shall be and remain inviolate except as modified by the Constitution itself, means the right as it existed at the time of the adoption of the Constitution. State v. Cobb, 24 Okla. 662, 104 Pac. 361, 24 L. R. A. (N. S.) 639; Baker v. Newton, 27 Okla. 436, 112 Pac. 1034; State Bar Comm. v. Sullivan, 35 Okla. 745, 131 Pac. 703, L. R. A. 1915D, 1218. This objection was urged to the Washington act, where it was contended that the Legislature could not fix a Procrustean rule

for the admeasurement of damages arising from injuries received by one in the employment of another, as both employer and employe had a right to submit to a jury the question of a plaintiff's right to recover, as well as the amount to which he was entitled. In overruling this objection, the court says:

"It may be that the Legislature cannot fix the amount of recovery, or provide for an absolute recovery, in all cases where one person is injured by another, regardless of the relation of the parties, or the question whether the injury is or is not the result of negligence; but it does not follow that it may not so provide where the injury happens in that class of employments subject to legislative regulation and control. If it be, as we have attempted to show, a proper regulation of hazardous industries to compel those engaged therein as owners or operators to pay a fixed sum into a fund to be used for the purpose of compensating the employes thereof for injuries received by them, it is difficult to understand why it is not also proper regulation to require the employes of such industry to accept a given sum for any injury they may receive while so engaged."

The court then discusses at some length the conditions surrounding litigation under prior laws, and the results which the Legislature undertook to bring about in order to promote the general welfare of the state, and concludes its discussion of this subject in the following language:

"The right of trial by jury accorded by the Constitution, as applicable to civil cases, is incident only to causes of action recognized by law. The act here in question takes away the cause of action on the one hand and the ground of defense on the other, and merges both in a statutory indemnity, fixed and certain. If the power to do away with a cause of action in any case exists at all, in the exercise of the police power of the state, then the right of trial by jury is thereafter no longer involved in such cases. The right of jury trial being incidental to the right of action, to destroy the one is to leave the other nothing upon which to operate." State v Clausen.

The same objection was urged in Cunningham v. Northwestern Improvement Company, supra, to the Montana act, where the court reached a like result as that reached by the Washington court, basing its holding upon the proposition that the right of trial by jury, intended to be preserved by the Constitution, referred to the trial of cases, actions, or suits at law, and had no reference to claims against an indemnity fund such as was provided for by that act, and that the adjustment of claims thereunder was an administrative function, and not a judicial proceeding, and that it was only in certain

cases falling under the latter case that trial by jury was guaranteed by the Constitution. Ward v. Farwell et al., 97 Ill. 593; Stertz v. Ind. Ins. Comm., 91 Wash. 588, 158 Pac. 258; People v. Hill, 163 Ill. 186, 46 N. E. 796, 36 L. R. A. 634. In the Jensen Case the New York court, speaking of the relation existing between employer and employe and of the remedy afforded by the act, says:

"When he (employe) enters into the contract of employment, he is now assured of a definite compensation for an accidental injury occurring with or without fault imputable to the employer, and is afforded a remedy which is prompt, certain, and inexpensive. In return for those benefits he is required to give up the doubtful privilege of having a jury assess his damages, a considerable part of which, if recovered at all, after long delay must go to pay expenses and lawyer's fees."

The scheme provided in the California act, which was sustained in the Pillsbury Case, made the remedy there provided exclusive, and the findings and conclusions of the commission on questions of fact final and not subject to review. Optional acts are not unconstitutional as denying the employe the right to a trial by jury. Young v. Duncan. 218 (Mass.) 346, 106 N. E. 1; Hunter v. Colfax (Iowa) 154 N. W. 1037; Sexton v. Newark Dist. Telegraph Co., 84 N. J. Law, 85, 86 Atl. 457.

The class of industries embraced by the act are of such a nature as to authorize regulation of their conduct and management by the state, and the obligations of both employer and employe to accept the conditions imposed by the statute grow out of the interest which the public has in the proper adjustment of the relations existing between them and the right to regulate the industry in which they are both engaged; and, while it may be urged that the relation existing between them is one of contract, the state may impose, as one of the conditions thereof, that the employe shall accept a fixed sum for injuries received in the course of his employment as defined by the act for the same reason it may impose liability upon the employer in cases where he is free from negligence. The unsatisfactory and unscientific method of awarding damages with all of the economic results attendant upon the administration of those laws has been deemed sufficient to justify interference by the state in occupations classed as hazardous, and to warrant the substitution of a new and more scientific plan intended to bring about better results, and to transfer the burden of losses occasioned in the prosecution of such industries in a large number of cases from the injured employe or his dependent ones, to the industry itself, and to effectually bring

about such a change it was necessary to withdraw from the employe his right of action as regulated and determined by the rules of the common law for future injuries, and in so doing the Legislature simply abolished the common-law rule of liability in such cases. If it may abolish the common-law defenses that were available, it may, with equal authority, declare that purely accidental injuries should no longer be actionable. The power to do both exists where it is deemed wise and for the public good.

It is urged that the injuries covered by the act are only those of an accidental nature, and that the employe cannot recover thereunder for a willful injury caused by his employer, and thus he is deprived of the equal protection of the laws. The act does not undertake to regulate willful injuries of the character mentioned, but leaves the injured employe to his remedy as it existed when the act was passed.

Considering the various provisions of the act together, there does not seem to be any ambiguity as to its meaning. It embraces all kinds of accidental injuries not resulting in death, whether occurring from the negligence of the employer or not, arising out of and in the course of employment, but does not include willful or intentional injuries inflicted by the employer, nor injuries resulting from an intent upon the part of the employe to injure himself or another or for a willful failure to use a guard or other protection against accident required by statute or furnished pursuant to an order of the state labor commissioner. A willful or intentional injury, whether inflicted by the employer or employe, could not be considered as accidental, and therefore is not covered by the act. If it were merely intended to cover accidental injuries for which the employe had no right of action, no reason is perceived why the Legislature would abolish the defenses of contributory negligence, negligence of a fellow servant, or assumption of risk, or why it should abrogate the employe's right of action for damages for injuries not resulting in death occurring in said hazardous occupation. The compensation afforded by the act and the procedure by which the same is determined were intended to be exclusive as to all of the injuries therein embraced, and the right of action theretofore possessed by the injured employe was abolished, leaving to him such right of action in the courts for willful injuries as he may have had prior to its passage, and the act, as thus construed, does not deprive plaintiff of the equal protection of the laws.

Plaintiff's injuries occurred as a result of an explosion of natural gas used for heating the ovens, caused by the negligence of defendant's foreman, while plaintiff was en-

gaged in his capacity as a baker at a table about 12 feet directly in front of the oven, and consisted of severe burns, which left permanent scars all over the face, head, body, back, arms, and hands, and which caused, and will cause, plaintiff great damage in the loss of earning capacity and ability to do manual labor, and have caused, and will cause, physical pain, mental anguish, and humiliation. His injuries are alleged to be permanent and of such a nature as to incapacitate him from performing manual labor during the balance of his life, and it is specifically alleged that the injuries to both plaintiff's hands and arms are such as to totally incapacitate him from performing the only kind of labor which he was able to perform.

Section 6, art. 2, of the act defines total disability, and includes in that definition the loss of both hands, and provides that compensation shall be paid in cases of total disability at the rate of 50 per cent. of the weekly wage for a period of not to exceed 500 weeks, and also declares that the loss of the use of both hands shall be equivalent to the loss thereof. The injuries to plaintiff's hands and arms, resulting in the loss of the use thereof, would constitute total disability within the definition given by the act, and entitle plaintiff to compensation therefor at the rate specified. Plaintiff contends that his injuries resulting in disfigurement are not within the purview of the law, and therefore he is entitled to maintain this action. The legislative intent was evident to award compensation for all accidental injuries arising out of or in the course of employment and award compensation therefor, and not to divide up such injuries and award compensation for a portion thereof and leave to the injured employe a remedy for the remainder. All of plaintiff's injuries were received in the course of his employment, were accidental, and were the result of the same negligent act of defendant. The compensation provided was intended to be exclusive, and a right of action in the courts therefor was abolished. The injuries involved in Shinnick v. Clover Farms Co., 169 App. Div. 236, 154 N. Y. Supp. 423, had no relation to the plaintiff's earning capacity, which was not impaired by reason of the fact that a portion of his ear was gone, and it was held that such injuries were not of a character for which compensation was provided by the law.

Plaintiff claims and the Attorney General concedes that the compensation provided is, in many instances, entirely inadequate, but with the wisdom or policy of the legislation we have no concern, our inquiry being limited to the one of power upon the part of the Legislature to enact such legislation; and, when the existence of this power is determined, the question of details is within the province of the Legislature. Jensen v. So. Pac. Co., 215 N. Y. 514, 109 N. E. 600; State v. Clausen.

We do not doubt that experience in the practical working of the law will prove the necessity for changes therein; and, as these conditions arise, relief may be had at the hands of the lawmaking body.

The judgment sustaining the demurrer is affirmed.

All the Justices concur.