## INDIAN TERRITORY ILLUMINATING OIL CO. v. DAVIS et al.

No. 22507.   Opinion Filed March 15, 1932.

Clayton B. Pierce, A. J. Follens, and Fred M. Mock, for petitioners.

Carmon C. Harris, for respondents.

KORNEGAY, J. This is a proceeding to review an award of the Industrial Commission which was entered on the 25th of May, 1931, as follows:

"Now on this 25th day of May, 1931, the State Industrial Commission being regularly in session, this cause comes on to be considered pursuant to a hearing had at Oklahoma City, Oklahoma, on May 13, 1931, before Inspector Wm. Noble, duly assigned by the Commission to conduct such hearing, on motion of the claimant to determine liability and extent of disability, at which hearing the claimant appeared in person and by attorney, C. C. Harris; the respondent appearing by attorney, Clayton B. Pierce, and a subsequent hearing had at Oklahoma City on May 14th before Inspector Noble, at which hearing there were the same appearances for both claimant and respondent; and the Commission, having reviewed the testimony taken at said hearings, examined and considered all records on file in said cause, and being otherwise well and sufficiently advised in the premises, finds the following facts:

"1. That claimant, Otis Davis, on June 10, 1930, was in the employ of respondent herein and engaged in a hazardous occupation subject to the provisions of the Workmen's Compensation Law; that arising out of and in the course of such employment the claimant sustained an accidental personal injury on June 10, 1930, being a strain received when lifting a meter gate and resulting in hernia.

"2. That the average wage of claimant at the time of said injury was $5.50 per day.

"The Commission is of the opinion, by reason of aforesaid facts, that claimant is entitled under the law to eight weeks compensation at the rate of $18 per week, amounting to $144, and the cost of an operation to correct said hernia.

"It is therefore ordered that within 15 days from this date the respondent, Indian Territory Illuminating Oil Company, pay to the claimant, Otis Davis, the sum of $144, being eight weeks compensation at $18 per week, and in addition thereto the cost of an operation to correct said hernia.

"It is further ordered that within 30 days from this date the respondent file with the Commission receipt or other proper report evidencing compliance with the terms of this order."

On the 30th day thereafter, the 24th of June, 1931, the Commission amended this award by a new order, as follows:

"Now on this 24th day of June, 1931, the State Industrial Commission being regularly in session, this cause comes on to be considered, it appearing that an omission occurred in the Commissioner's order of May 25, 1931, by leaving out of said order, finding of fact No. 3, which should be incorporated in the order, and amended to read as follows:

"3. That the claimant should be excused for his failure to give notice of injury of the accident within 30 days, for the reason that the respondent has not been prejudiced thereby.

"It is therefore ordered: That the Commission's order of May 25, 1931, be amended to include finding of fact No. 3, as follows:

"3. That the claimant should be excused for his failure to give notice of injury of the accident within 30 days for the reason that the respondent has not been prejudiced thereby.

"And in all other respects said order be and remain in full force and effect."

Complaint is here made of the award not being supported by sufficient evidence. We think that complaint is well taken in this case. If this accident occurred at all, it occurred on the 10th of June, 1930, while the claimant was engaged in pipe line work for the Indian Territory Illuminating Oil Company. On the admitted facts, he never made any complaint to the Commission or to his employer until March 31, 1931.

The claimant was a mature man, and had worked for several years around the coal mines in Oklahoma. The employer, on the admitted facts, had notices posted in conspicuous places about its grounds warning the workmen to report any accident that happened to them. It is admitted that claimant did not do so.

The doctor who attended the claimant, and who wanted his money, stated that he called by telephone the office of the Indian Territory Illuminating Oil Company to see if they would pay him for his services, but he did not get into communication with anybody connected with the company that had any authority in the matter, and apparently, from what he says, he was merely after his own pay. The claimant was advised by that doctor to go to the company doctor and make known his troubles. He refused to do it. He continued to work at the pipe line job, and was finally let out of employment. It never occurred to the claimant to present this claim for something like eight months after he ceased working for the employer.

The Workmen's Compensation Law was passed for the purpose of enabling workmen, who were hurt, to get restoration and rehabilitation, as well as support during curing time. It was an innovation upon the doctrine of the common law. In the various states, nearly all of them, the Workmen's Compensation Laws were attacked as violative of constitutional principles, and the provisions requiring a hearing before condemnation, commonly known as due process of law, and the law of the land. In our own state an attack was made, and this court in Adams v. Iten Biscuit Co., 63 Okla. 52, 162 P. 938, in an opinion by Justice Hardy, sustained the constitutionality of our act under the doctrine of general police power, and also upon the doctrine that an adequate remedy was afforded. This court in the case of Henly v. Oklahoma Union R. Co. et al., 81 Okla. 224, 197. P. 488, in passing upon a hernia case, held that it was beyond the power of the Commission to expose the laborer to the danger of a major operation in order to minimize the amount to be paid by the employer, and in that case certain sections of the law are reviewed, and it appears that promptness is required, with a view of rehabilitation by means of medical and surgical treatment. The summing up of the purposes of the law in that case is found on page 226, of 81 Okla., where the court, speaking through Mr. Justice Kennamer, says:

"The Workmen's Compensation Laws of this state abolish the right of the injured employee to maintain an action for damages in the court, and vest the State Industrial Commission with jurisdiction to award compensation for injuries sustained by the employee in the course of his employment at a fixed rate prescribed by the statute, which amount is 50 per cent. of the average weekly earning, during the disability or partial disability of the injured employee until the maximum amount prescribed by the act has been paid. In view. of the fact that the law has abolished the right of action of the injured employee to recover damages for his injuries, the law should be liberally and fairly construed in favor of the injured employee, and in making an award the Industrial Commission has no authority to impose any condition upon the injured employee not authorized by law."

The second subdivision of the syllabus is as follows:

"The Workmen's Compensation Laws of this state deprive the injured employee of the right of action in the court of the state to recover damages for injury received, and provide a limited amount of compensation during disability, and said laws were adopted with the view of enabling employer and employee to settle their differences without litigation, and to enable each employee not guilty of willful misconduct, to receive quickly a reasonable recompense for the injuries accidentally received in the course of his employment, under certain fixed rules. These laws must be liberally construed in favor of the injured employee."

Taking into account the history of these acts, it is clear that a new system was introduced. The fellow servant doctrine had been carried to the limit as applied to the complexity of modern industry. Courts had been hampered by tradition and by the process of case hardening, known as judicial decision, so that amidst the webs

that were thrown around the injured employee, his case was well-nigh hopeless. So, to afford a speedy and sure remedy, and at the same time to throw the burdens arising out of industry on industry, the Workmen's Compensation Laws were enacted. The old doctrines of the assumption of risk and the necessity of proving negligence were in a large measure done away with, and what was a long time court procedure was changed into speedy settlement by administrative action.

Rehabilitation and restoration and support during disability is the underlying principle of the modern conception of industrial accidents. While the construction should be liberal in favor of the laborer, it should be equally liberal in favor of the evident purposes of the act and the end to be attained.

Before those laws came into operation, the immediate actors, the employer and employee, were largely looked upon as the persons in interest. A new order came on. Community welfare was thought to be based on individual effort and the individual would have to be able to work before he was called on to work. Hospitalization and medical attention were the first things provided for the injured workman. His physical pain and suffering were no longer the objects of the tender care of damage suit lawyers. The disability, however, of the laborer to support himself and his dependent ones was what was in the mind, apparently, of the Legislature in making these laws. A new supervising power was brought in the Industrial Commission. In order that it might be informed so that it could do the work of supervision, the imperative provision is contained in section 7292, C. O. S. 1921, which is in mandatory terms that the Commission should be informed of the accident within 30 days after the injury.

Recognizing that the laborer might be incapacitated, the Legislature said that that notice could be given by any person entitled to the compensation or by someone on his behalf. It went further and prescribed that the notice should be in writing and that it should contain the name and the address of the employee, and that it should state in ordinary language the time of the injury, the place of the injury, the nature of the injury and the cause of the injury, and it should be filed by the claimant or by some person on his behalf. It further provided a method of giving notice to the Commission by registered letter addressed to the Commission at its office. Notice was required to be given within the same time to the employer and in the same manner, but in the case of the employer it could be given by actual delivery or by sending by mail by registered letter, addressed to his last known place of residence. It further provided that if the employer was a partnership, notice might be given to any one of the partners, and if the employer was a corporation, such notice could be given to any agent or officer thereof upon whom legal process could be served, or any agent in charge of the business in the place where the injury occurred. These provisions appear to be mandatory in language, though in view of the requirement of the liberal construction in favor of the claimant slight circumstances have been hit upon by courts to obviate strict compliance.

The effect of the failure to give the notice is prescribed in the act, and that effect is to bar any claim under the act. However, the Commission could excuse the failure on the ground that a sufficient reason that it could not have been given, existed. In the present case, there was none. The claimant knew what his rights were beyond peradventure. He was told by the doctor, and by warnings posted in conspicuous places on the grounds where he was working, calling his attention to them. His past experience was such that no one could reasonably doubt that he knew his rights and that if he desired to exert them, in a case of this sort, where there was no negligence of the employer on the admitted facts, he must give notice to the Commission and he must give notice to his employer within a limited time. Possessed of his faculties, he saw fit to do nothing.

Very frequently we find cases where the employee, by reason of some fancied idea that to report his injury would cause his discharge, waits until after discharge, but in this case for eight months after the discharge the claimant saw fit to make no complaint in the manner prescribed by law or to the parties prescribed by law. Such being the case, the natural presumption would be that he did not think he had much claim. The excuse, however, in this case, as found by the Commission on the evidence, was that the employer had not been prejudiced by failure to give the notice. The presumption is, under the mandatory terms of the statute, that there was a reason for prescribing the notice in the manner that is required. The very policy of the act itself would be thwarted if the salutary provisions of it are lightly to be destroyed.

The purpose of the act was to throw upon

industry the expense incurred by industry. There are other laborers besides the one that is now complaining whose dependent ones must be protected. Insurance companies are brought on the scene in order that the risk may be scattered and the burden may not be visited upon an individual unable to bear it. The risk that they assume is based largely upon the requirements of the law and in reliance thereon. Natural justice would require that if an employee was hurt, he should say something to the one that he sought to hold responsible for the hurt. Duty requires him to speak. In the present case he was warned to speak, but he did not do it. Those in the employ of the petitioner here, who had the matter in charge, were well known to the claimant. He saw fit to remain silent under those conditions.

The incident, if it occurred, would pass out of memory. We do not think there is any substantial evidence in this case to warrant the award, or any solid foundation for asserting that the carrier could not have been prejudiced by reason of the failure to notify. It would require too much credulity to be exercised in this case to so hold.

We think the award should be vacated, and the case remanded to the Industrial Commission, with directions to dismiss the case, and it is so ordered.

CULLISON, SWINDALL, and ANDREWS, JJ., concur. LESTER, C. J., and McNEILL, J., concur in conclusion. CLARK, V. C. J., and RILEY and HEFNER, JJ., absent