2000 OK 68

**Manuel RIVAS, Jr., Petitioner,**

v.

**PARKLAND MANOR, Respondent.**

**No. 91,007.**

Supreme Court of Oklahoma.

Sept. 19, 2000.

William C. Doty, The Bell Law Firm, Norman Oklahoma for Petitioner.

H.A. Carter, H.A. Carter Law Office, Oklahoma City, Oklahoma for Respondent.

BOUDREAU, J.

¶ 1 The issue presented is whether it is constitutionally permissible for an injured worker to have his workers' compensation benefits limited, due to preexisting adjudications of permanent partial disability ("PPD"), in order to prevent receipt of combined awards in excess of 100% permanent partial disability. After a review of the record on appeal, we answer the question in the affirmative.

¶ 2 Claimant, Manuel Rivas, Jr., was injured while working for Parkland Manor in January 1997. He pursued a workers' compensation claim and received temporary total disability benefits and medical treatment, including surgery. After surgery, Rivas sought PPD benefits for his continuing permanent disability. At the time, he had preexisting PPD adjudications totaling 99.85%.[1]

¶ 3 After a hearing, the trial court adjudicated Rivas's injury as a 30% permanent partial disability to the body as a whole. The trial court then applied 85 O.S. Supp.1995, § 22(7) and limited Rivas' compensation award to 0.15% permanent partial disability compensation. Title 85 O.S. Supp.1995, § 22(7) provides in part:

> The sum of all permanent partial disability awards, including awards against the Multiple Injury Trust Fund, shall not exceed one hundred percent (100%) permanent partial disability for any individual. An individual may not receive more than five hundred twenty (520) weeks' compensation for permanent partial disability, but may receive other benefits under the Workers' Compensation Act if otherwise eligible as provided in the Workers' Compensation Act.

The statute limits PPD so that the sum of an injured worker's total PPD adjudications cannot exceed 100% permanent partial disability. By applying the statute to Rivas, the trial court reduced Rivas' compensation to $99.12 from $24,900.00, the amount he would have received had he been awarded the entire sum under the 30% adjudication.

¶ 4 After the hearing Rivas appealed the trial court's order to the three judge panel of the Workers' Compensation Court. Rivas argued that 85 O.S. Supp.1995, § 22(7) as applied by the trial court violated his constitutional rights on federal equal protection grounds. He also argued the application of the statute violated Oklahoma constitutional provisions, Art. 2, § 6 (which mandates that every wrong will have a speedy and certain remedy) and Art. 5, § 54 (which prohibits

---

1. Both parties agree that all previous PPD adjudications which brought Rivas to the 99.85% disability level occurred prior to the effective date of the 1995 amendment to 85 O.S. § 22(7).

retroactive application of laws affecting substantive rights).[2]

¶ 5 The three judge panel found that 85 O.S. Supp.1995, § 22(7) as applied to Rivas did not violate either the state or federal constitutions. From that decision Rivas appealed and the Court of Civil Appeals reversed the lower court ruling reducing Rivas' PPD award, finding 85 O.S. Supp.1995, § 22(7) violated Rivas' rights under the equal protection clause of the Unites States Constitution. U.S. Const., Amend. XIV. Respondent, Parkland Manor, then filed its Petition for Certiorari with this Court.

### I. Standard of Review

■■■ ¶ 6 This case presents no questions of disputed fact[3] and as a result the appeal addresses only questions of law, whether the award reduction under § 22(7) is permissible in view of the state and federal constitutions. The appellate court will exercise its "plenary, independent, and non-deferential authority [when] reexamin[ing] a trial court's legal rulings." *Spielmann v. Hayes*, 2000 OK CIV APP 44, 3 P.3D 711; *Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.*, 1996 OK 125, ¶ 4, 932 P.2d 1100, 1103 n. 1. This Court's standard of review is *de novo* and gives no deference to the legal rulings of the trial court. *State, ex rel. Dept. of Human Services, ex rel. Jones v. Baggett*, 1999 OK 68, 990 P.2d 235. Regarding questions of constitutionality, this Court will not declare an act of the legislature "void unless it is clearly, palpably, and plainly inconsistent with the terms of the Constitution." *Hazel–Atlas Glass Co. v. Walker*, 1945 OK 176, 195 Okla. 470, 159 P.2d 268, 269.

### II. Equal Protection Analysis

■■■ ¶ 7 "[T]he equal protection clause is a pledge and a guarantee of the protection of equal laws", however "exact equality is not a requirement[.]" *Brown v. Lillard*, 1991 OK 74, 814 P.2d 1040, 1042–43. The guiding principle under the equal protection clause is that all people shall be treated alike under like circumstances and like conditions, enjoying the same benefits and privileges as well as the same liabilities. *Nordlinger v. Hahn*, 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992); *Franklin v. Carter*, 51 F.2d 345 (10th Cir.1931). The equal protection clause prohibits a governing body from applying a law dissimilarly to people who are similarly situated. *Brown*, 814 P.2d at 1042–43; *State, ex rel. Oklahoma Bar Ass'n v. Minter*, 1998 OK 59, 961 P.2d 208.

---

**2.** Rivas asserts an argument on appeal that he did not present to the three judge panel. He argues that he is entitled to full disability compensation at 30% instead of the reduced 0.15% by the terms of 85 O.S. Supp.1997, § 3(11) *[sic]* (see 85 O.S. Supp.1997 § 3(14), definition of permanent impairment). Section 3(14) defines permanent disability and incorporates the "Guides to the Evaluation of Permanent Impairment" (guides). Rivas then argued the guides do not allow for a finding of more than 100% impairment or disability. He contends § 3(14) is inconsistent with § 22(7). We disagree.

We find no conflict between § 3(14) and § 22(7). In fact, § 3(14) and § 22(7), which states that an injured worker's disability awards cannot exceed 100%, are consistent. Section 3(14) limits the physician's ability to evaluate disability in excess of 100%, while and § 22(7) limits the court's ability to compensate any disability in excess of 100%. Further, the worker can receive no more than 520 weeks' compensation for permanent partial disability. Both statutes are consistent in their failure to accommodate disability rates in excess of 100%.

Second, even if we viewed the two statutes as inconsistent, § 22(7) would control as the more

specific statute. Section 22(7) narrowly addresses previous impairment and specifically permanent partial disability, while § 3(14) addresses the much larger issue of permanent impairment, including permanent total disability and cases in which no previous disability was at issue. Rivas correctly points out in his brief that the more specialized statute would control, although he incorrectly concluded the definition was the more specialized of the two statutes. *See Duncan v. City of Nichols Hills*, 1996 OK 16, 913 P.2d 1303, 1310. Finally, although both statutes were amended in 1997, the relevant language of § 3(14) was unchanged in 1997, making § 22(7) the most recent legislative enactment. The 10th Circuit has held that when two statutes conflict, the most recently enacted controls. *Travelers Ins. Co. v. Panama–Williams, Inc.*, 597 F.2d 702 (10th Cir.1979).

**3.** The underlying facts of this case are not in controversy. The employer does not deny the injury. Neither party appealed the 30% PPD rating. Both parties acknowledge Rivas had preexisting PPD adjudications of 99.85%. Both parties agree that the $99.12 award is not full compensation for a 30% PPD adjudication.

¶ 8 Rivas concedes that the standard of scrutiny to be used when examining the governmental action in question under an equal protection analysis is the rational basis test. Using this rationale, legislation may draw certain classifications among individuals or groups of individuals, if those classifications are not arbitrary and capricious and bear some reasonable or rational relationship to a permissible public policy or goal. *Brown*, 814 P.2d at 1043; *Rogers v. Sontag*, 1988 OK 94, 764 P.2d 883. The distinction between the classifications must "have some relevance to the purpose for which the classification is made." *Brown*, 814 P.2d at 1043 (citing *T.I.M. v. Okla. Land Title Ass'n*, 1984 OK 66, 698 P.2d 915, 920). Rational basis is the lowest standard of scrutiny applied in equal protection analysis and is used when the classification does not jeopardize the exercise of a fundamental right or make a classification based upon an inherently suspect characteristic. *Nelson v. Nelson*, 1998 OK 10, 954 P.2d 1219. A strong presumption exists in favor of legislative enactments and the constitutionality of a statute will be upheld unless it is "clearly, palpably, and plainly inconsistent with fundamental law." *Id.* at 1224; *See also Price v. Reed*, 1986 OK 43, 725 P.2d 1254; *Earnest, Inc. v. LeGrand*, 1980 OK 180, 621 P.2d 1148. Therefore, the legislature's 100% limitation on PPD compensation must be similarly presumed constitutional, unless clearly proven otherwise.

¶ 9 To determine if the law is in accord with the constitution the Court must first identify the population and whether a distinction or classification has been drawn within that population. The population at issue in this case begins with the larger group of all people covered by workers' compensation. The application of 85 O.S. Supp. 1995, § 22(7) eventually filters this large group into two subclasses of individuals who have previous PPD adjudications (1) some of which will find their current PPD award reduced when receiving compensation for their latest disability and (2) some who will have an undiminished award because their current PPD rating does not carry them over the 100% allowable limit.

¶ 10 The discrimination arises because the second subclass will receive full compensation benefits for the latest disability whereas the first subclass, of which Rivas is a member, will have their compensation benefits reduced or even eliminated entirely. As a result, two individuals employed and covered by the Workers' Compensation Act may suffer identical injuries, under seemingly identical circumstances, and receive identical PPD ratings, but one will be compensated to the full extent of his PPD benefits and the other denied some or all of the PPD compensation allowed under the Act.

¶ 11 In determining whether this classification is constitutionally proper, we must first identify the objects and purposes of the Workers' Compensation Act. The object and purposes of a law present the touchstone for determining whether the classification passes equal protection muster. *Reilly v. Ozzard*, 33 N.J. 529, 166 A.2d 360 (1960) (the reasonableness of a classification depends upon the objective).

¶ 12 The Workers' Compensation Act is primarily designed to provide compensation to covered workers for loss of earning capacity, while placing the burden of supporting injured workers on the industries responsible for those injuries. *Adams v. Iten Biscuit Co.*, 1917 OK 47, 63 Okla. 52, 162 P. 938, 940. In the interest of the public good and creation of a more orderly system of compensation, the injured worker is not required to establish employer negligence in his pursuit of compensation. *Id.* at 945. However, in exchange for the employer's greater and more certain exposure the Act provided the employer with certain advantages. It offered the employer a maximum loss and made the employer's liability more certain and predictable. *Fox v. Dunning*, 1927 OK 79, 124 Okla. 228, 255 P. 582, 585–86; *Upton v. State of Okla., ex rel. Dept. of Corrections*, 2000 OK 46, ¶ 8, 9 P.2d 84. "The object of the Workmen's Compensation Act, 85 O.S.1941, § 1 et seq., is to compensate, *within the limits of the act*, for loss of earning power occasioned by injuries to the body, disabling one in the performance of ordinary manual or mechanical labor. *United States Casualty Co. v. Steiger*, 179 Okl. 407, 66 P.2d

55[.]"[4]   *J.E. Trigg Drilling Co. v. Daniels,* 1943 OK 349, 193 Okla. 644, 145 P.2d 944, 946 (emphasis added).

¶ 13 The critical question is whether the classification rests upon a difference which bears a reasonable relationship to any of the goals of the Workers' Compensation Act. In answering this question, we conclude the law does promote the goal of more limited and certain monetary exposure for employers. Application of § 22(7) offers employers finite liability for an employee's permanent partial disability; with regard to PPD, the employer is never responsible for more than 100% PPD compensation. Although an injured employee may still receive significant temporary and medical benefits, the employer's ultimate exposure is more limited and certain when the PPD compensation is capped.

¶ 14 We also observe that the legislative classification framed in § 22(7) operates alike on all persons covered by the Workers' Compensation Act. All workers covered under the Act are subject to the 100% PPD limit. Section 22(7) treats Rivas no differently than any other worker similarly situated, that is with 99.85% preexisting PPD. Because the legislative classification framed in § 22(7) applies evenhandedly to all workers and is based upon distinctions with a proper relation to the object of the Workers' Compensation Act, the classification does not violate the federal guarantee of equal protection under the law.

¶ 15 While the $99.12 PPD award provided Rivas may seem inadequate for the disability caused by his shoulder injury, the Court cannot interfere "with the wisdom or policy of the legislation[.]" *Adams,* 162 P. at 946. "[O]ur inquiry [is] limited to the one of power upon the part of the Legislature to enact such legislation; and, when the existence of this power is determined, the question of details is within the province of the Legislature." *Id.* If the amount of recovery "is too small the people have the power,

either through their elected officials or by their right of initiative petition, to increase it[.]" *Hughes Drilling Co. v. Crawford,* 1985 OK 16, 697 P.2d 525, 530.

¶ 16 Regardless the legislature's wisdom in limiting PPD recovery to 100% PPD disability, the limitation clearly serves one of the specified goals of the Workers' Compensation Act. The legislature may strike a balance between the creation of a more strict liability system for the employer, while limiting the potential monetary exposure when the employer does have to pay. *Adams,* 162 P. at 945. We find the statute does not violate the equal protection clause of the federal constitution, because it does bear a rational relationship to at least one of the legislature's public policy goals.

### III.  Right Without a Remedy

¶ 17 Rivas argued upon appeal that limiting his recovery to a total of 100% PPD compensation violated Art. 2, § 6 of the Oklahoma Constitution and effectively denied him a remedy for his permanent compensable injury.[5] Art. 2, § 6 provides:

> The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.[6]

The specially concurring Court of Civil Appeals opinion agreed with Rivas that the legislature's amendment impermissibly denied him an award for his quantified loss.

¶ 18 We disagree. In interpreting our constitutional remedy guarantee, the Oklahoma Supreme Court has held that it does not impose any substantive limitation on the legislature. *Adams,* 162 P. at 942. In *Adams v. Iten Biscuit,* this Court held that the right to remedy guarantee afforded by Art. 2, § 6 is a mandate to the judiciary and is not intended to be a limitation on the authority of the legislature. *Id.* The consti-

---

4.  *United States Casualty Co. v. Steiger,* 179 Okla. 407, 66 P.2d 55 was overruled in part on other grounds by *Fiesta Pools of Oklahoma City v. Pratt,* 1965 OK 133, 405 P.2d 1014, 1015.

5.  The immunity provided Rivas' employer here is not total, but a partial immunity, capping the

employer's liability for PPD to 100% permanent partial disability.

6.  At least thirty-nine states claim a constitutional right to a remedy. See David Schuman, The Right to a Remedy, 65 Temple L.R. 1197, 1201.

tutional guarantee mandates that the courts should be open and afford a remedy for those wrongs that are recognized by the law of the land.[7]

¶ 19 The formulation of the particular elements and details of the Workers' Compensation Act clearly falls within the legislature's province. Okla. Const. Art. 5, § 36; *Adams,* 162 P. at 942. The legislature can limit the amount of PPD an injured worker receives. It is within the legislature's authority to set that limit at 100%.

¶ 20 Rivas invokes the remedy guarantee to attack this substantive legislative policy choice. However, this Court has already determined Art. 2, § 6 was not "intended to preserve a particular remedy for given causes of action in any certain court of the state, nor was it intended to deprive the Legislature of the power to abolish remedies for future accruing causes of action ..., or to create new remedies for other wrongs as in its wisdom it might determine." *Adams,* 162 P. at 942. Accordingly, this Court cannot grant Rivas the relief he seeks under Art. 2, § 6, because the legislature is under no obligation to preserve a certain remedy for Rivas and the courts are, in turn, not able to provide a remedy where the legislature has not provided one.

¶ 21 The remedy clause does not constrain the legislature, but rather compels the judiciary to be open to all persons with actionable causes. In Oklahoma, Art. 2, § 6 does not provide an avenue for Rivas to attack the actions of the legislature. Because it is the legislature and not the judiciary that limited Rivas' PPD compensation, this proposition must fail.

### IV. Vested Rights

¶ 22 While the rationale of *Adams* reflects an approach of extreme deference to the legislature, Oklahoma rejects unconditional absolutism. *Adams,* 162 P. at 943. A legislature with power to create new rights and abolish old ones can only do so with rights that are not vested; even the most unrestrained legislature cannot deprive a plaintiff of vested interests. *Id.; See also In*

*re Bomgardner,* 1985 OK 59, 711 P.2d 92, 96 n. 22.

¶ 23 A person acquires a vested right to a remedy for a cause of action when that cause of action accrues. Okla. Const. Art. 5, § 54. In Oklahoma, a party's cause of action accrues when that person can maintain the cause to its legal conclusion, the legal authority to demand redress. *Mid–Continent Casualty Co. v. P & H Supply, Inc.,* 1971 OK 135, 490 P.2d 1358, 1361; *In re Bomgardner,* 711 P.2d at 96 n. 22; *Barry v. Board of County Comm'rs,* 1935 OK 701, 173 Okla. 645, 49 P.2d 548, 549. This means that not only does the individual have the right to pursue the cause, but also has the right, if successful, to the remedies available at the time of accrual. *Loyal Order of Moose, Lodge 1785 v. Cavaness,* 1977 OK 70, 563 P.2d 143, 146.

¶ 24 Under this rationale, Rivas' cause of action for his shoulder injury accrued in January 1997 when he sustained an on the job injury; at no time prior to the injury did Rivas have the right to maintain the cause of action for his shoulder surgery. *Maryland Casualty Co. v. Hankins,* 1975 OK 25, 532 P.2d 426. Title 85 O.S. Supp.1995, § 22(7) was amended in 1995, meaning the 100% limitation upon Rivas' PPD changed prior to the accrual of Rivas' cause of action.

> It may be safely stated as a general rule that the citizen has no property in a rule of law, and that, while rights which have accrued to him under the operation of existing laws and have thereby become vested may not be taken away by a change of the rules, he cannot be heard to complain if the rule is changed before any rights have accrued to him thereunder.

*Adams,* 162 P. at 943. As a result, Rivas had no vested right to a remedy for his latest PPD prior to January 1997 and no right to the more liberal remedy provided under the pre–1995 statute.

### V. Conclusion

¶ 25 The legislative classification provided in § 22(7) does not offend the equal protection clause because the classification uniform-

---

7. This Court expressed approval for a Missouri statute similar to the remedy guarantee in Art. 2, § 6, noting that the article meant "only that for such wrongs as were recognized by the law of the land, the court should be open and afford a remedy." *See Adams* 162 P. at 943.

ly applies to all workers under the act and bears a rational relationship to the legislative goals of balancing a more limited and certain compensation award scheme with greater liability exposure upon the employer. Title 85 O.S. Supp.1995, § 22(7) does not violate Art. 2, § 6 of the Oklahoma Constitution because Art. 2, § 6 does not limit legislative authority. Finally, the enactment of the legislation in 1995 did not disturb any of Rivas' existing or vested rights, as his cause could not be maintained prior to the date of injury in 1997. Because Rivas failed to overcome the presumption of constitutional validity accorded the statute, the 100% limitation must stand.

¶26 CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; ORDER OF THE THREE JUDGE PANEL OF THE WORKERS' COMPENSATION COURT AFFIRMED.

¶27 SUMMERS, C.J., HARGRAVE, V.C.J., HODGES, LAVENDER, KAUGER, and WINCHESTER, JJ., concur.

¶28 WATT, J. dissents.