1999 OK CIV APP 51

**James H. MOSS, Petitioner,**

v.

**AFFILIATED FOOD STORES, INC.; Liberty Mutual Insurance Company; and, The Workers' Compensation Court, Respondents.**

**No. 91,631.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Jan. 19, 1999.

Rehearing Denied March 8, 1999.

Certiorari Denied May 3, 1999.

Victor R. Owens, Daryl G. Alphin, Owens & Owens, Tulsa, Oklahoma, For Petitioner.

Kristin Blue Fisher, Victor R. Seagle, Feldman, Franden, Woodard & Farris, Tulsa, Oklahoma, For Respondents.

## OPINION

STUBBLEFIELD, P.J.

¶1 Claimant seeks review of an order awarding permanent partial disability benefits, determining date of termination of temporary total disability and awarding employer a credit for overpayment. Based on review of the record on appeal and applicable law, we sustain in part and reverse in part.

¶2 Claimant James H. Moss filed his Form 3 on February 10, 1997, alleging injury to both legs occurring while unloading groceries for Employer Affiliated Food Stores, Inc. Employer did not initially dispute the claim but, in May 1997, sought termination of temporary total disability (TTD) as well as a credit for overpayment.

¶3 Claimant amended his Form 3 to include consequential injuries to his neck and left shoulder. Employer admitted a consequential injury to Claimant's shoulder but denied injury to the neck.

¶4 On October 27, 1997, the trial court entered an order for medical examination by an independent medical examiner (IME), who was ordered to make an examination based on the "alleged injury to the NECK" to "determine causation of Claimant's complaints." The order further directed the IME to determine whether Claimant was temporarily totally disabled and in need of additional medical treatment and to specify

the treatment needed. It further directed the IME to complete a "Court's Form 5 (Physician's Release and Restrictions)" if it was determined that Claimant was not temporarily totally disabled or if he had reached maximum medical improvement. The IME subsequently submitted a report and executed the Form 5 on December 3, 1997. The IME indicated that Claimant was released to full duty with permanent restrictions; Claimant should not lift more than fifty pounds, should not do overhead reaching and should not do repetitive overhead lifting.

¶ 5 The cause was tried on the issues of permanent partial disability (PPD), continued medical maintenance, vocational rehabilitation and the period of TTD. After hearing, the trial court found that Claimant had suffered injury to his neck, both feet and left shoulder. However, the trial court only awarded PPD compensation for the left foot and left shoulder—four percent PPD to the body as a whole due to left shoulder injury and twenty percent disability to the left foot—and awarded compensation for 52.4 weeks. The trial court also denied Claimant's request for continuing medical maintenance and reserved the issue of vocational rehabilitation. As for TTD, the trial court found Claimant had been temporarily totally disabled from June 20, 1996, to May 6, 1997, and awarded a credit to Employer for overpayment of TTD benefits from May 6, 1997, to December 11, 1997—$12,842.60. Claimant appeals.

■ ¶ 6 On appeal, an order of The Workers' Compensation Court must be sustained if there is any competent evidence to support it. *Parks v. Norman Mun. Hosp.*, 1984 OK 53, ¶ 2, 684 P.2d 548, 549. Thus, this court must ascertain whether there is any competent medical evidence to support the trial court's findings and order.

■ ¶ 7 Claimant first proposes that the trial court erred as a matter of law in relying on reports of Employer's medical experts in finding an overpayment of TTD benefits where Claimant was still receiving treatment from his treating physician for the period in question. Claimant quotes a portion of the language of Workers' Compensation Court Rule 15(C)(1), 85 O.S. Supp.1997, ch. 4, app.,

to support his assertion that TTD properly may be terminated, upon the employer's application, after a report has been filed by a physician "who indicates the employee has been released from the physician's professional care and is able to return to work...." However, we do not find this a valid issue herein, because it is not an instance of the trial court terminating TTD on Employer's application but as a part of the final adjudication of PPD at a time when TTD certainly has ended. Thus, the report of Employer's physician is not incompetent because of Rule 15 and must be examined to determine whether it is competent evidence supporting the determination of the date of termination of TTD.

■ ¶ 8 The record reveals that the first medical report was that of Dr. Farrar to Employer's insurer on April 9, 1997. He stated that Claimant showed "signs of impingement" and "also the potential of a cervical disc causing his symptomology." He recommended that Claimant be treated with an injection of corticosteroids, as well as physical therapeutics. He further noted that, if there was no improvement, "magnetic resonance imaging [MRI] should be performed of the left shoulder, as well as potentially the cervical spine."

¶ 9 Thereafter, Dr. Marberry examined Claimant on May 6, 1997. The date of that report was the date the trial court fixed as the termination of Claimant's TTD. In that report, the doctor notes:

The area of complaint I believe is soft tissue in nature **unless** it could be an occult neurologic problem but with my neurologic testing I really was not able to determine that a formal neurologic problem was occurring. Perhaps neurologic evaluation would be of some benefit to rule out an occult nerve situation. **Unless there is some neurologic abnormality occurring**, I have nothing further to offer this gentleman orthopedically. In general the subjective complaints and responses do not seem to correlate extremely well with any objective findings. Therefore, it is my opinion that this gentleman should gradually increase his activities of daily living

and I myself find no particular reasons for him not to return to work. (Emphasis added.)

The physician made no finding that Claimant had reached maximum medical recovery or benefit but only states that Claimant "should gradually increase his activities of daily living." (Emphasis added.) Further, because of the conditional language used and the notation of a possibility of "an occult neurologic problem," we find that this report contains an ambiguous finding, limited only to the witness's specialty of orthopedics, and leaves open the distinct prospect that neurologic injury might exist and impair Claimant in his ability to work. Therefore, we find that the May 6, 1997, report does not constitute competent evidence establishing that Claimant was no longer TTD.

■ ¶ 10 Dr. Farrar submitted another report of June 16, 1997. He noted that the orthopedist (Dr. Marberry) had suggested a "neurological assessment," and stated this would be appropriate. He stated that maximum medical recovery had been achieved and that TTD had ended. However, his evaluation was limited to Claimant's left shoulder and both feet/ankles. Even with regard to those three injuries, Dr. Farrar gave a *conditional release* for return to work, stating that Claimant "could return to work, although, it requires some limited duty, insofar as he cannot perform heavy lifting above shoulder height, nor can he perform ambulation, especially on unlevel surfaces for long periods of time."

¶ 11 Dr. Farrar did not purport to address Claimant's claim for injury to his neck or to assess Claimant's ability or inability to return to work with regard to the neck injury, even though just two months earlier Dr. Farrar had recommended that Claimant have an MRI examination of the neck. That procedure had not been performed. In his re-

port, Dr. Farrar's conclusions are based solely on ratings of Claimant's shoulder and feet/ankle injuries.

■ ¶ 12 It was not until October 27, 1997, that an IME, Dr. Hawkins, was appointed for the specific purpose of evaluating Claimant's alleged *neck* injury, after which the MRI recommended by Dr. Farrar on April 9, 1997, was performed. The IME filed his report on December 3, 1997, citing the chief complaint of "[n]eck, left shoulder and left arm pain." He noted the recommendation of Dr. Farrar for additional assessment of the neck and found that Claimant had chronic cervical strain due to injury sustained during his rehabilitative treatment for his feet/ankle injuries. He found that Claimant was not TTD due to injury to the neck. However, the IME also recommended that Claimant "refrain from doing any heavy working activities" and set a fifty-pound lifting restriction as well as restrictions from "repetitive work overhead and away from his body on a continuous repetitive basis." This physician released Claimant for restricted work on December 3, 1997.

■ ¶ 13 This last report of December 3, 1997, represents a finalizing medical evaluation—completing the evaluation of Dr. Farrar.[1] However, the conditional releases by Dr. Farrar and Dr. Hawkins would not support termination of TTD, because the only evidence on the issue of restricted job availability with Employer was Claimant's testimony that Employer told him that it did not have light duty work available for him. See *Hinton v. Labor Source*, 1998 OK CIV APP 2, 953 P.2d 358.[2] However, although he does not use the specific term, we conclude that Dr. Hawkins' report, based on consideration of all of Claimant's injuries and conditions, found that Claimant has reached maximum medical improvement as of the date of the

---

1. Dr. Farrar also did a follow-up report, after reviewing Dr. Hawkins' report but did not, in that report, make any finding of exact date of termination of TTD.

2. The court in *Hinton* addressed the issue of "whether an employer has the obligation to offer light duty to a claimant if it is available ... or whether the burden is on a claimant to inform his employer he is available for light duty."

1998 OK CIV APP 2, at ¶ 1, 953 P.2d at 358. The court stated: "Under the facts of this case, we hold an employer must inform an employee of the availability of light duty work in order to defend against responsibility for paying temporary total disability." *Id.* The court stated that the burden is not shifted to a claimant to "prove a negative"—that no light duty work was available. *Id.* at ¶ 10, 953 P.2d at 359.

examination—December 3, 1997. Although Claimant could not return to his former employment, that disability would be compensated by subsequent PPD award.[3]

¶ 14 Based on the foregoing analysis, we find no competent evidence to support the order of the trial court that Claimant's period of TTD ended on May 6, 1997.[4] When read in conjunction with the June 16, 1997, findings of Dr. Farrar, the only competent evidence relative to cessation of TTD is the report of December 3, 1997.

¶ 15 Citing *Stice v. McDonnell Douglas*, 1997 OK CIV APP 11, 935 P.2d 1195, Claimant next asserts that the trial court erred as a matter of law in its calculation of PPD of his left shoulder and left foot. Furthermore, both Claimant and Employer agree that the trial court found Claimant suffered injury to his right foot and neck but did not address those body parts when fixing PPD. Thus, both parties agree that the cause must be remanded for further proceedings with regard to those body parts. Nonetheless, both parties speculate on what finding the trial court had intended to or should have made in the calculation of awards for the left shoulder and left foot. Claimant maintains that the trial court's calculation of 52.4 weeks compensation was error, while Employer maintains that the trial court erred in awarding twenty percent impairment to the left shoulder, which it claims was outside the parameters of disability specified in the medical evidence.

¶ 16 From our review, we believe that the failings in the trial court's calculations are likely a consequence of the failure to adjudicate PPD based on injuries to all affected body parts. There is no indication of any legal misinterpretation of 85 O.S. Supp.1996 § 22(3), which can or should be addressed in this opinion.

¶ 17 Accordingly, that portion of the trial court's order finding that Claimant had sustained a work-related injury to his neck, right foot, left foot and consequential injury

to his left shoulder and denying continued medical maintenance is affirmed. The order determining PPD based only on his left shoulder and left foot injuries is reversed. The trial court's finding with regard to Claimant's period of TTD and the order granting Employer a credit for overpayment of TTD are reversed. The cause is remanded for determination of PPD based on all of Claimant's adjudicated injuries and with instructions to determine the date of termination of the period of TTD as December 3, 1997, and to award any credit for overpayment based on that date.

¶ 18 AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.

BOUDREAU, V.C.J., and REIF, J., concur.

---

3. At the time of trial, June 22, 1998, Claimant testified that he was working at other employment, which he could do under the physical limitations dictated by the various examining doctors. No one asked Claimant when he began this employment, but it was not mentioned in the medical report of December 3, 1997. We con-

clude that no issue exists that Claimant had other employment prior to that time.

4. Because of this conclusion, we do not address Claimant's additional proposition of error that res judicata operated to prohibit the order granting Employer the credit for overpayment of TTD.