2008 OK CIV APP 70

**CITY OF DUNCAN, Own Risk, and City of Duncan Fire Department, Petitioners,**

v.

**TULSA SPINE HOSPITAL, and The Workers' Compensation Court, Respondents,**

and

**Mutual Assurance Administrators, Inc., Respondent,**

and

**Herman D. Kespereit, Claimant.**

**No. 105,183.**

Court of Civil Appeals of Oklahoma, Division No. 1.

June 20, 2008.

James M. Frieda, Stuart, Frieda, & Hammond, P.C., Duncan, OK, for Petitioners.

Richard S. Toon, Shane A. Regier, Toon & Osmond, P.L.L.C., Tulsa, OK, for Respondent Tulsa Spine Hospital.

R. Jay Mcatee, Tulsa, OK, for Respondent, Mutual Assurance.

CAROL M. HANSEN, Judge.

¶1 Petitioners, City of Duncan and City of Duncan Fire Department (collectively Employer), seek our review of a Workers' Compensation Court (WCC) order which found Petitioners' delay in payment of the medical bill submitted by Respondent, Tulsa Spine Hospital (Hospital), to be unreasonable and justified waiving the limits of the WCC's Schedule of Medical and Hospital Fees (the Schedule). Finding no error of law and competent evidence to support the WCC order, we sustain.

¶2 Although Respondent, Mutual Assurance Administrators, Inc. (Administrator), who is Employer's third party administrator for WCC claims, was not a party in the trial proceedings before the WCC,[1] the Supreme Court granted its *Application to Participate in Appeal,* allowing Administrator "to participate in this proceeding as a party respondent." Administrator, who argued it had an interest in seeing the WCC's findings "which essentially absolved it of being dilatory in processing the claim are upheld on appeal," filed an appellate Answer Brief. The claim and disability award of Claimant, Herman Kespereit, are not in dispute and he is not a party to this appeal.

¶3 Claimant filed his Form 3, *Employee's First Notice of Accidental Injury and Claim for Compensation,* on February 14, 2005. He alleged work related injury to his low back in a single incident accident on January 4, 2004. On March 2, 2005, Employer filed its Form 10 *Answer and Pretrial Stipulation,* in which it conceded Claimant had sustained a compensable injury, but denied disability. On March 30, 2005, Claimant requested a pre-hearing conference on the question of surgery recommended by Dr. C., his treating physician, for his lower back condition.

¶4 Pursuant to a request by Employer, the WCC issued its *Order for Medical Examination,* dated June 7, 2005, appointing Dr. F. as an independent medical examiner (IME). Among the issues included in this order to be addressed by the IME was Dr. C.'s surgery recommendation. Dr. F. subsequently performed the lower back surgery at Hospital on August 8, 2005. On August 11, 2005, Administrator wrote to Hospital declining to pay its invoice in the amount of $1,009.80 for pre-surgery radiology and laboratory work dated August 3, 2005. The reason stated for refusing payment was "surgery was not authorized and therefore, billings associated with this surgery will not be paid."

¶5 Jan Kester, Administrator's account manager and adjuster for Employer's accounts, was called by Hospital at trial and testified Administrator also received Hospital's $79,324.51 statement for the surgery itself in August 2005. She acknowledged the statements from Hospital contained a notation that failure to offer payment of charges within sixty days of receipt "may limit the applicability of the Schedule of Medical and Hospital fees." Administrator eventually paid Hospital $20,098.86 pursuant to the Schedule's established fees in December 2006.

¶6 The record reflects Employer stipulated Hospital's charges were not paid within the sixty days standard set forth in Rule 50(C), Rules of the Workers' Compensation Court, 85 O.S. Supp.2005, App., which provides:

---

1. Counsel for Administrator did make a *Special Limited Entry of Appearance* in the WCC on May 24, 2007, after Employer had filed its appeal to the WCC *en banc,* however the appellate record does not show any other involvement with the case there.

Payment of Charges: All charges which comply with the Schedule of Medical and Hospital Fees should be paid by the uninsured or own risk employer or insurance carrier within thirty (30) days of the employer's or carrier's receipt of the bills from the provider. Failure to offer payment of charges within sixty (60) days of receipt of the bills may limit the applicability of the Schedule of Medical and Hospital Fees.

¶7 On November 1, 2005, Hospital filed its Form 19, *Request for Payment of Charges for Health or Rehabilitation Services*, along with the Form 9 *Motion to Set for Trial* required by Rule 50(E)(2). The Form 19 noted total charges of $80,334.31 and no payments. In its *Response* to Hospital's Form 19 request, Employer acknowledged payment had been refused on the grounds of "necessity of treatment" and "unauthorized physician." As a further affirmative defense, Employer noted—"Order issued by the Court on June 7, 2005 did not include treatment."

¶8 Hospital's Form 19 request was heard on April 17, 2007. Hospital asked the WCC to award it the full $80,334.31 pursuant to Rule 50 and not apply the limits of the Schedule. Hospital agreed credit for the $20,098.86 paid by Administrator was appropriate. As noted above, Employer stipulated payment of Hospital's charges was not made within Rule 50's sixty day standard and acknowledged the court had the discretion not to apply the Schedule. Employer, however, asserted Hospital provided its services with the expectation it would be paid according to the fees established by the Schedule and that Hospital should therefore be required to show some "injury" to justify not applying the Schedule's set fees.

¶9 The trial court's order of April 23, 2007, found Employer's failure to pay Hospital's bill within sixty days was "unreasonable" and that Hospital's charges of $79,324.51 were "reasonable in amount." The court ordered Employer to pay "the additional sum of $50,000.00," after an unexplained reduction of $9,225.65. More specifically, the trial court further found:

THAT [Employer] used a third party administrator but failed to communicate to that third party administrator [Employer's] knowledge of treatment and surgery authorizations not only Ordered by the Court but stipulated to by [Employer]. The facts show instead that [Employer] withheld that information and knowledge and in fact denied authorization to its third party administrator to pay claimant's bill received in August of 2005. The Court further FINDS that the third party administrator would have timely paid the bill in this case but for the actions of [Employer] withholding information and authorization despite the stipulation in the Order of June 1, 2005 and the Order of June 7, 2005.

¶10 On May 3, 2007, Employer appealed the trial court's order to a three-judge panel of the WCC. Employer argued [a] Hospital "could not articulate damages justifying assessment of an additional $50,000.00," [b] the trial court should not have found it withheld information from Administrator, and [c] the award of an additional $50,000.00 was an abuse of discretion because Hospital had been paid according to the Schedule. The three-judge panel unanimously affirmed the trial court's order, with one judge specially noting—"It is unfortunate [Employer] will not receive the benefit of the fee scheduled amount but those negotiated figures contemplate payment within the proper time frames." Employer now seeks our review of the WCC order as affirmed.

¶11 Here, Employer essentially reiterates the contentions raised before the three-judge panel, which present issues of fact and law. In reviewing issues of fact in WCC orders, our responsibility simply is to canvass the facts, not with the object of weighing conflicting proof in order to determine where the clear weight lies, but only for the purpose of ascertaining if the decision is supported by competent evidence. *Parks v. Norman Municipal Hospital*, 1984 OK 53, 684 P.2d 548. If supported by competent evidence, and not otherwise contrary to law, the WCC's findings on non-jurisdictional issues may not be disturbed on review. *Id.* However, on questions of law we exercise de novo review. *Ibarra v. Hitch Farms*, 2002 OK 41, 48 P.3d 802. Under this latter standard, the Court has plenary, independent and non-deferential

authority to address legal issues. *American Airlines v. Hervey*, 2001 OK 74, 33 P.3d 47.

¶ 12 Rule 50(C) does not contain a standard by which the WCC is to determine when the Schedule should be held not to apply for failure to make timely payment, nor does it set forth a remedy which should be afforded the provider who has not been timely paid. Employer's argument is apparently that the provider must prove actual damages to receive more than provided in the Schedule. The WCC, on the other hand, as reflected in its order, adopted a "reasonableness" standard. We find no support for Employer's position in Rule 50 and Employer provides no legal authority otherwise supporting its argument.

█ ¶ 13 We believe the WCC was correct in exercising its discretion to determine if Employer's delay in authorizing payment was reasonable, without requiring proof of actual damages. *See, e.g.*, (*Hale v. A.G. Ins. Co.*, 2006 OK CIV APP 80, 138 P.3d 567)(Unreasonable delay in settling or denying a claim is a factor in proving bad faith, but nothing supports a finding that delay beyond ninety days is patently unreasonable.) We may not reverse a trial court determination for abuse of discretion unless we find the court "made a clearly erroneous conclusion and judgment, against reason and evidence." *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 1996 OK 121, 932 P.2d 1091.

█ ¶ 14 We further believe prejudice to providers may be presumed where payment is made beyond the sixty day Rule 50(C) standard. As expressed in the concurring note of the three-judge panel member, the "negotiated figures [of the Schedule] contemplate payment within the proper time frames." In establishing the maximum fees in the Schedule, a compromise between the interests of the employers and providers is reached. The employers get the benefit of a lower fee structure than may be paid by non-WCC insurers or patients, but in return have a relatively short time in which payment is expected and must accept the fees as set forth in the Schedule. The providers must accept less than the "usual, customary and reasonable" fees which they might receive from non-WCC insurers or patients, but get

the benefit of more prompt and certain payment than they might otherwise experience. If employers get the benefit of the lower fees, but fail to afford providers with the benefit of prompt payment, there is an imbalance in the system which under Rule 50 the WCC must address.

¶ 15 The best analogy for the Schedule's compromise is the rationale for the Workers' Compensation Act itself, as expressed in *Rivas v. Parkland Manor*, 2000 OK 68, 12 P.3d 452:

> In the interest of the public good and creation of a more orderly system of compensation, the injured worker is not required to establish employer negligence in the pursuit of compensation. However, in exchange for the employer's greater and more certain exposure the Act provided the employer with certain advantages. It offered the employer a maximum loss and made the employer's liability more certain and predictable.

¶ 16 That same certainty and predictability is also necessary to ensure both employers and providers enjoy the benefits implicit in the Schedule. The role of Rule 50(C) is to enhance certainty and predictability by providing an incentive for employers to make prompt payment and to provide some relief to providers when they are disadvantaged by late payment. It is the WCC's role to determine, under the facts and circumstances of each case, if the employer's reasons for making the late payment are reasonable, and if not, to decide if, and to what degree, limiting the applicability of the Schedule is justified.

█ ¶ 17 The question here is whether the WCC was correct in determining Employer was unreasonable in paying Hospital almost eighteen months after Administrator had received the billing for Claimant's surgery. We hold the WCC was correct. As reflected in the WCC's order, the finding that Employer's delay in payment was unreasonable is premised in large part on the additional finding Employer authorized Claimant's treatment and surgery, but failed to communicate this to Administrator so payment could be made. The WCC found this authorization in the cited orders of June 1st and June 7th,

2005, which deal with appointment of Dr. F., the IME.

¶ 18 The cited orders of June 2005 are not examples of great clarity, but Employer has not relied on any alleged ambiguity in making its arguments. Rather, Employer has asserted it did not authorize Claimant's surgery by Dr. F. at Hospital. We note there are, without explanation, two documents in the record entitled *Order for Medical Examination* and both were filed July 7, 2005. The first page of the two orders appear to be identical, containing basic language appointing Dr. F. IME.

¶ 19 However, beginning on the second page, one order differs in that it contains seven additional specific paragraphs, four of which detail medical questions Dr. F. is tasked to answer and two which authorize, "by mutual stipulation of the parties," treatment and surgery. The last authorizes diagnostic testing if necessary to any of the issues raised in the order. The specific language in the foregoing order comes directly from what the WCC referred to as the order of June 1, 2005, which is entitled *Appointment of Independent Physician or Rehabilitation Evaluator.* This latter order is a form filled in by hand, including check marks to indicate the tasks and authority of the IME. These check marks, and one hand written "special instruction," comport with the specific directions added to the June 7th order. Reading these two orders together, it appears obvious they represent the authoritative directions of the WCC.

¶ 20 The June 1st "order" is signed by the judge and counsel for both parties, including Employer's counsel. While the June 7th order may have been easier to read if it had been tailored, and not cobbled together from the formatted language of the earlier order, Employer consented to the provisions by its counsel's signature and may not now assert authority for surgery was not given. A fair reading of the June 7th order by a medical provider, including Hospital, would be that Employer did consent to surgery. Additionally, the order provides that the parties waive any objection to the performance of surgery under 85 O.S.2001 14(G), which allows employers to select the treating physician.

¶ 21 On July 29, 2005, Employer did file an *Objection to Medical* concerning Dr. F.'s report of June 28, 2005, but the objection is on probative grounds, couched in general language and does not mention or object to surgery. Further, because Dr. F.'s report was not included in the appellate record, we have no way of knowing what it might have said, if anything, about the proposed surgery. Employer contends the fact it had two counsel and two adjusters for Administrator involved in Hospital's claim may have contributed to the delay in payment, but there is no evidence to support this contention. We are also unpersuaded any dispute as to the surgery or to the audited amount of Hospital's claim caused the delay. The record establishes Employer authorized the surgery by stipulation and there is no clear evidence it withdrew that authorization.

¶ 22 Administrator's adjuster testified Employer had not informed them of the authorization and that Employer had advised them Hospital should not be paid because the surgery had not been authorized. There was a dispute as to the correct audited amount of Hospital's claim under the Schedule, but Administrator took no action to resolve the dispute because it had been told by Employer the claim was not to be paid. It did not send its audit of the claim to Employer for the same reason.

¶ 23 The WCC's finding that Employer authorized the surgery is supported by the record, as is the finding Employer did not communicate this to Administrator. Employer does not contest the reasonableness of Hospital's charges. Rule 50(C) gives the WCC discretion to limit applicability of the Schedule. We have not been provided any persuasive authority or argument the WCC is precluded from determining the circumstances of any case to justify allowing the full reasonable and necessary charges to which a medical provider would otherwise be entitled if not for the Schedule. The WCC made that determination here under the facts presented, which are supported by the record, but mitigated its award somewhat by the $9,225.65 reduction. The WCC's actions

were not clearly erroneous and its judgment was not against reason and evidence." *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.,* 932 P.2d at 1097. There was no abuse of discretion.

¶24 The WCC's order is supported by competent evidence and is not contrary to the controlling law. The order is therefore SUSTAINED.

ADAMS, P.J., and JOPLIN, J., concur.