2008 OK CIV APP 115

PINNACLE REHABILITATION HOSPITAL and Dr. Tanya Washburn, Petitioners,

v.

Armando RIVERA–VILLAREAL, Longhorn Service Corp., CompSource Oklahoma, and The Workers' Compensation Court, Respondents.

No. 105,741.

Court of Civil Appeals of Oklahoma, Division No. 4.

Nov. 26, 2008.

Arlen Fielden, Amanda Maxfield, Crowe & Dunlevy, Oklahoma City, OK, Madalene Witterholt, Crowe & Dunlevy, Tulsa, OK, for Petitioners.

John S. Oldfield, Jr., Oldfield & Graves, Oklahoma City, OK, for Respondents Longhorn and CompSource.

DOUG GABBARD II, Presiding Judge.

¶ 1 Petitioners, Pinnacle Rehabilitation Hospital[1] (Pinnacle) and Dr. Tanya Washburn (collectively, Providers) seek review of a workers' compensation court order denying recovery of attorney fees, costs, and prejudgment interest to Providers after they prevailed on their claim for payment for medical services provided to Claimant, Armando Rivera–Villareal. We sustain in part, reverse in part, and remand.

## BACKGROUND

¶ 2 In August 2004, Claimant, an oilfield worker, was injured as a result of a heat stroke while working for Longhorn Service Company (Employer). The next month, he filed a Form 3 seeking workers' compensation benefits. Shortly thereafter, Employer and its insurance carrier, CompSource Oklahoma (CompSource), filed a response admitting compensability and liability for Claimant's injury. A few months later, however, Employer/CompSource decided to contest compensability, and on March 4, 2005, filed an amended answer denying Claimant sustained an injury arising out of and in the course of his employment. Employer/CompSource also refused to pay Claimant's mounting medical bills.

¶ 3 Nevertheless, Pinnacle and Washburn provided health services to Claimant almost continually from September 4, 2004, through April 5, 2005. Ultimately, Pinnacle submitted bills totaling $338,422.57, and Washburn submitted bills totaling $10,400. On March 8, 2005, Pinnacle filed its first Form 19 with the workers' compensation court seeking payment for a portion of the health costs incurred, and simultaneously moved for a trial. Thereafter, Claimant also moved to set for trial.

¶ 4 However, on April 4, 2005, Claimant, acting through a special guardian appointed by the district court, filed a Form 100 seeking an order dismissing his cause "with prejudice"[2] in exchange for Employer/CompSource's payment to him of $240,000.[3] The court entered the dismissal order. Indisputably, this settlement was reached without the knowledge, consent, or consultation of Pinnacle or Washburn.

¶ 5 Employer/CompSource continued to deny compensability of Claimant's injury. Trial on that issue occurred in March 2006. Providers presented Claimant's deposition testimony supporting his allegation of an on-the-job heat stroke in August 2004 that left him virtually incapacitated and in need of round-the-clock care.[4] Providers also presented medical reports from Claimant's treating physician and a medical expert supporting the claim. Employer's evidence consisted of a medical expert's report, dated March 17, 2005, opining that based on the expert's review of certain medical records and other information, Claimant's injury was not workrelated.[5] The hearing culminated in

---

1. According to the briefs, Pinnacle has now been renamed Valir Rehabilitation Hospital.

2. The Form 100 explicitly states that the grant of a dismissal, whether with or without prejudice, "does not adjudicate the rights of any health care provider that has provided reasonable and necessary medical care to the claimant for a work related injury." In this regard, see also Standard Paving Co. v. Lemmon, 1927 OK 383, 263 P. 140; and Speed v. Okla. State Indus. Court, 1962 OK 10, 368 P.2d 244.

3. Claimant also submitted a copy of his release of claims and covenant not to sue.

4. The deposition was admitted over Employer/CompSource's objection, after the court found Claimant was unavailable to testify based on Providers' counsel's representation that Claimant had returned to his native Mexico, and was not a U.S. citizen. Neither the admissibility of the evidence nor the competency or validity of the workers' compensation court's compensability order, which was not appealed, is at issue in the present appeal.

5. The report did not reflect the physician had examined Claimant or reviewed records of Washburn or Pinnacle. Although it suggested that Claimant was a rumored drug abuser, it admitted there was no evidence of such abuse, and Claimant's drug screen revealed no drug use.

an April 5, 2006, order by the workers' compensation court finding that Claimant sustained a compensable work-related injury to the body as a whole in the form of a heat stroke.[6] It reserved the Form 19 matters for future hearing.

¶ 6 Employer/CompSource then submitted Providers' gross bills to an outside auditing firm which recommended paying Pinnacle $177,770.87 and Washburn $6,694.83. Checks in these amounts were sent to Providers in June 2006, leaving in dispute more than $160,000 as to Pinnacle and more than $3,500 as to Washburn. The trial court required the parties to submit Pinnacle and Washburn's bills to the court's medical services department for review pursuant to the Court Administrator's "Schedule of Medical and Hospital Fees" (Fee Schedule). That review resulted in the department's finding, in February 2007, that Pinnacle's "maximum allowable reimbursement" (MAR) under the Fee Schedule was $270,738.06 (an amount $92,967.19 more than already paid by Employer/CompSource, but $67,684.51 less than Pinnacle's total request), and that Washburn's MAR was $8,336.06 (an amount $1,641.23 more than already paid by Employer/CompSource, but $2,063.94 less than Washburn's total request). However, Employer/CompSource continued to deny further obligation for the services rendered by Providers.

¶ 7 The matter proceeded to trial on the Form 19 in June 2007. Pinnacle's chief executive officer, Stacy Smith, testified that prior to initially admitting Claimant, Pinnacle obtained a "pre-certification number and authorization" from CompSource, and that CompSource also provided a claims examiner and case manager who participated in Claim-

ant's care throughout his stay at Pinnacle. Smith also testified that CompSource was provided periodic interim bills from Pinnacle pursuant to CompSource's request, and that Pinnacle regularly conducts internal audits of its own invoices, including those related to Claimant, to assure that Pinnacle's charges are consistent with industry standards. However, Smith agreed that the bill submitted with Providers' Form 19 had not been reduced in accordance with the Fee Schedule's "stop loss" method of reimbursement, which the workers' compensation court's medical services department had applied.[7]

¶ 8 Also testifying was LaDonna Williams, bill review manager for Corvel Corporation, the independent auditing firm hired by Employer/CompSource to review Providers' charges. Williams explained that in auditing a bill Corvel essentially compares a particular facility's charges, described by means of DRG ("diagnosis related groups") codes, with those that are "usual and customary" in the facility's geographic area. For bills less than $50,000, Corvel uses the codes listed by the facility and audits based on the facility's own itemized description. For bills greater than $50,000, Corvel first enters each charge and description into a separate software program, performs the audit/comparison, and then applies the 20–percent reduction under the Fee Schedule's "stop loss" provision.[8]

¶ 9 On June 19, 2007, the trial court entered an order which: (1) overruled Employer/CompSource's objection to Washburn's charges, found that $8,336.06 of Washburn's charges were reasonable, and ordered Employer to pay Washburn an additional $1,641.23, bringing her total payment to the MAR under the fee schedule (but still less than Washburn's total request); and (2)

---

6. The court's order of April 5, 2006, states in pertinent part:
   "THAT on AUGUST 3, 2004, claimant was employed by [Employer] ... and on said date claimant sustained accidental personal injury resulting in a HEAT STROKE (BODY AS A WHOLE inclusive of CENTRAL NERVOUS SYSTEM, RESPIRATORY SYSTEM AND CEREBROVASCULAR SYSTEM) arising out of and in the course of claimant's employment."

7. According to the Fee Schedule, "Stop loss is an independent reimbursement methodology that will reimburse the hospital for unusually costly

services rendered during treatment to an injured worker." Fee Schedule, In–Patient Hospital Services Ground Rules, Rule 6.a., at 138 (effective Jan. 1, 2005). If the sum of a facility's charges equals or exceeds $50,000, the facility's total audited charges are then multiplied by 80% to determine the maximum allowable reimbursement. *Id.* at Rule 6.b.

8. Because Providers' bills were submitted over a period of time, most were for less than $50,000, although at least one was for more than $50,000.

overruled, in part, Employer/CompSource's objection to Pinnacle's charges, found that $245,853.74 of Pinnacle's charges were reasonable, and ordered Employer to pay Pinnacle an additional $68,082.87. The total award to Pinnacle was $24,884.32 less than the MAR calculated by the court's medical services department, and $92,568.83 less than the total requested in Pinnacle's Form 19.

¶ 10 Thereafter, Pinnacle and Washburn applied for attorney fees, costs, and prejudgment interest. Following a February 2008 hearing, the trial court denied Providers' application, finding that Providers were required by 85 O.S. Supp.2005 § 14(F)(5) to prevail "in full" on their claim in order to recover attorney fees, and that they had not done so. The court also found no party had acted unreasonably or in bad faith in pursuing or denying Claimant's claim, and that Providers were not entitled to attorney fees, costs, or interest. Providers filed this appeal.

### STANDARD OF REVIEW

¶ 11 Providers' challenge of the workers' compensation court's statutory interpretation concerning attorney fees presents a question of law, which this Court reviews *de novo. Arrow Tool & Gauge v. Mead,* 2000 OK 86, ¶ 6, 16 P.3d 1120, 1122–23; *Wilson Paving, Inc. v. Abernathy,* 2003 OK CIV APP 72, ¶ 4, 76 P.3d 103, 105. To the extent we review the court's denial of attorney fees and costs based on the lower court's finding of reasonable or unreasonable conduct under § 30, however, we review for abuse of discretion. *Bond v. Fox Bldg. Supply,* 1992 OK 19, ¶ 5, *826 P.2d 599,* 601. Reversal on grounds of abuse of discretion requires a finding that the trial judge made a clearly erroneous conclusion and judgment, against reason and evidence. *Abel v. Tisdale,* 1980 OK 161, ¶ 20, 619 P.2d 608, 612.

9. An attorney fee award in a workers' compensation claim is a matter of substance rather than procedure, and is governed by the statute in effect at the time of the claimant's injury. *Payne v. Archer,* 2001 OK CIV APP 17, n. 1, 19 P.3d 327 (cert. denied 1/23/01). In the case at bar, it is undisputed that Claimant's injury occurred in August 2004; therefore, we refer to the statutory provisions in effect at that time.

### ANALYSIS

¶ 12 Oklahoma follows the American Rule, which provides that "each litigant bears the cost of his/her legal representation and our courts are without authority to assess and award attorney fees in the absence of a specific statute or a specific contract therefor between the parties." *Kay v. Venezuelan Sun Oil Co.,* 1991 OK 16, ¶ 5, 806 P.2d 648, 649; *see also Rout v. Crescent Pub. Works Auth.,* 1994 OK 85, ¶ 9, 878 P.2d 1045, 1049. An exception to this rule applies when a court finds that a party "acted in bad faith, vexatiously, wantonly or for oppressive reasons," or "if the successful litigant has conferred a benefit on a class of persons." *Bond* at ¶ 13, 826 P.2d at 602–03. Similarly, interest is not recoverable unless provided for by contract or statute. *Withrow v. Red Eagle Oil Co.,* 1988 OK 16, ¶ 10, 755 P.2d 622, 625.

¶ 13 Here, Providers rely on 85 O.S. Supp. 2005 § 14(F)(5) (renumbered, unchanged, in 2005 from § 14(F)(4)) and 85 O.S.2001 § 30 (amended in 2005) in support of their requests for costs and attorney fees.[9] In support of their claim for interest, they rely on 85 O.S.2001 § 42 and 12 O.S. Supp.2005 § 727.1. These statutes are addressed separately below.

### *Attorney Fees Under* 85 O.S. Supp.2005 § 14

¶ 14 Section 14(F)(5)(formerly § 14(F)(4), renumbered eff. July 1, 2005), states:

The Administrator's review of medical and treatment charges pursuant to this section shall be conducted pursuant to the fee and treatment schedule in existence at the time the medical care or treatment was provided. The order of the approving medical and treatment charges pursuant to this section shall be enforceable by the Court in the same manner as provided in the

Although Providers also referred to 12 O.S. Supp.2004 § 2011.1 in the lower court and in a subheading of their reply brief, their appellate briefs neither argued nor cited authority concerning this statute; we therefore consider any allegation of error on this ground waived.

Workers' Compensation Act for the enforcement of other compensation payments. Any party feeling aggrieved by the order, decision or award of the Administrator shall, within ten (10) days, have the right to request a hearing on such medical and treatment charges by a judge of the Workers' Compensation Court. *The judge of the Court may affirm the decision of the Administrator, or reverse or modify said decision only if it is found to be contrary to the fee and treatment schedule existing at the time said medical care or treatment was provided.* The order of the judge shall be subject to the same appellate procedure set forth in Section 3.6 of this title for all other orders of the Court. The right to recover charges for every type of medical care for personal injuries arising out of and in the course of covered employment as herein defined, shall lie solely with the Workers' Compensation Court, and all jurisdiction of the other trial courts of the state over such action is hereby abolished. The foregoing provision, relating to approval and enforcement of such charges and duration of treatment, shall not apply where a written contract exists between the employer or insurance carrier and the person who renders such medical, surgical or other attendance or treatment, nurse and hospital service, or furnishes medicine, crutches or apparatus. *When a medical care provider has brought a claim in the Workers' Compensation Court to obtain payment for services, a party who prevails in full on the claim shall be entitled to a reasonable attorney fee.* (Emphasis added.)

¶ 15 There are no Oklahoma cases interpreting the phrase "prevails in full on the claim"

as used in § 14(F)(5), and the issue is one of first impression. However, Providers argue that the last sentence of § 14(F)(5) logically cannot require that a medical provider receive *everything* requested in order to prevail "in full," because such an interpretation would mean that attorney fees could never be awarded since all provider requests are automatically reduced under the Fee Schedule. We agree.

■ ¶ 16 We find it significant that the Oklahoma Legislature in § 14(F)(5) implicitly limited the workers' compensation court's authority to deviate from the Fee Schedule by specifying that the judge may reverse or modify the Court Administrator's award *"only if it is found to be contrary"* to the fee schedule existing when medical treatment was provided. Thus, under § 14(F)(5), a workers' compensation judge would never be authorized to award a medical reimbursement amount higher than that allowed by the Fee Schedule; which necessarily leads to the conclusion that recovery "in full" within the context of § 14(F)(5) must mean that a provider has been awarded the maximum medical charges allowed by the Fee Schedule.[10] We conclude that a medical provider has "prevailed in full" under § 14(F)(5) so as to be entitled to an attorney fee if it receives the maximum amount reimbursable under the Fee Schedule as determined by the Workers' Compensation Court Administrator.[11]

■ ¶ 17 Here, Dr. Washburn "prevailed in full" because the workers' compensation court clearly awarded her the full MAR as determined by the Court Administrator. Therefore, Dr. Washburn is entitled to an award of a reasonable attorney fee

---

10. As discussed in a later portion of this opinion, in *City of Duncan v. Tulsa Spine Hospital,* 2008 OK CIV APP 70, 190 P.3d 1197, the court held that the workers' compensation court correctly removed the limits of the Fee Schedule after an employer failed to pay a hospital's bill within 60 days. However, *City of Duncan* dealt with an insurer's failure to "promptly" pay a medical provider's charges within 30 days as required by Workers' Compensation Rule 50(C), 85 O.S. Supp.2006 ch. 4, app. That case thus presented a different issue from the one involved here-i.e., discerning the Legislature's intent in the statute authorizing attorney fees in § 14.

11. This interpretation is consistent with holdings of the Oklahoma Supreme Court, which has frequently indicated that the wording of a statute is a pivotal factor in determining who comes within the definition of "prevailing party" under an attorney fee-entitlement provision. *See e.g., Tomahawk Resources, Inc. v. Craven,* 2005 OK 82, 130 P.3d 222; *Midwest Livestock Systems v. Lashley,* 1998 OK 68, 967 P.2d 1197; *Welling v. American Roofing and Sheet Metal Co.,* 1980 OK 131, 617 P.2d 206; *Robert L. Wheeler, Inc. v. Scott,* 1991 OK 95, 818 P.2d 475.

pursuant to § 14(F)(5), in an amount to be determined by the workers' compensation court on remand.[12] However, Pinnacle did not receive the full MAR as determined by the Administrator. Therefore, it did not "prevail in full," and was not entitled to an award of attorney fees under § 14(F)(5). Nevertheless, as discussed below, we find both Pinnacle and Dr. Washburn entitled to their costs, including attorney fees, under § 30.

### Attorney Fees and Costs Under
### 85 O.S.2001 § 30

¶ 18 Title 85 O.S.2001 § 30 "specifically treats the subject of taxing of attorney fees as costs in a workers' compensation proceeding." *Peabody Galion Corp. v. Kropp*, 1983 OK 13, ¶ 6, 658 P.2d 1155, 1156. Under § 30(A), a court is authorized to "assess the total cost of the proceedings" against a party if the court determines the compensation proceedings "have not been brought on a reasonable ground, or that denial of benefits has not been based on a reasonable ground." At the time of Claimant's injury, § 30(C) directed the workers' compensation court to determine a claim for legal services under § 30 on a "quantum meruit" basis.[13]

¶ 19 The Oklahoma Supreme Court has held that the "cost assessment penalty" of § 30, in the context of a proceeding to determine the reasonableness of health care costs under § 14, applies only "to instances in which the claim itself" is at issue. *McDonald's v. Groves*, 1982 OK 111, ¶ 8, 652 P.2d 281, 283. In *McDonald's*, the Court affirmed an award of attorney fees to a claimant for the portion of the proceeding attributable to determining the claimant's disability, but reversed the attorney fee award attributable to the "Form 19" portion of the proceeding concerning health care services. *Id.* at ¶¶ 8–9. The Court found that, because the workers' compensation court had not considered the issue of whether the employer had been unreasonable in its denial of the claim, an award of attorney fees as part of the "total cost" of the proceedings was not warranted. *Id.* In essence, the Court held that § 30 was not intended to authorize an attorney fee when the sole issue before the court concerned the reasonableness of a medical providers' bill, inasmuch as medical providers' fees must always be submitted for court approval and a finding of reasonableness under § 14. Rather, the Court held, an employer or injured worker "should not be assessed the penalty of payment of the total cost of the proceeding unless the claim or denial thereof is outside the bounds of credibility," and assessment of the total cost is not authorized "in the absence of the finding of unreasonableness" of the claim or its denial. *Id.* at ¶¶ 6–7, 652 P.2d at 282–83. Because the claim's reasonableness was not at issue, the Court in *McDonald's* held § 30's cost provision did not apply.

¶ 20 Here, however, the reasonableness of Employer/CompSource's actions in denying Claimant's claim was squarely at issue. The workers' compensation court found Employer/CompSource did not act unreasonably.[14]

---

**12.** Because § 14(F)(5) only provides for an award of attorney fees and does not address other costs, Dr. Washburn's recovery under this section would not include a cost award. As discussed in the text, however, each Provider is entitled to its costs under § 30.

**13.** Under 85 O.S.2001 § 30(C):

A claim for legal services shall be determined by the Court on a quantum meruit basis.
1. A claim for legal services in contested temporary disability cases shall not exceed ten percent (10%) of the amount of the award for temporary disability. Legal service fees paid in uncontested cases for temporary total disability shall not exceed ten percent (10%) based on quantum meruit as ordered by the Court.
2. A claim for legal services shall not exceed twenty percent (20%) of the amount of the

award for permanent disability or death benefits.

**14.** The lower court's determination that Employer/CompSource acted reasonably in its handling of Claimant's claim is implicit in its order awarding Providers fees for health care services, and thus presents a finding that is sufficiently definite and certain for this Court's review. *See Clayton v. Fleming Cos.*, 2000 OK 20, ¶¶ 15–16, 1 P.3d 981, 985. The issue was critical to a determination of whether Providers are entitled to take advantage of the cost assessment penalty of § 30, and presumably the lower court was aware of the *McDonald's* decision that would permit recovery by Providers of its costs, including attorney fees, on a quantum meruit basis if Employer acted unreasonably in its denial of Claimant's claim.

Providers argue otherwise, contending that Employer engaged in unreasonable "efforts to avoid and/or maneuver around their statutory obligation" for Claimant's health care fees, and thus triggered the cost assessment penalty provisions of § 30. We agree.

■ ¶ 21 Indisputably, Employer/CompSource filed an answer admitting liability for and compensability of Claimant's injury. Employer was aware that Providers were treating Claimant, provided a claim number for Claimant's case, and appointed a case manager who participated with Providers in Claimant's inpatient treatment and care. In fact, in January 2005, Employer/CompSource unsuccessfully requested the court to change Claimant's care to a facility other than Pinnacle. Employer's admission of liability continued for at least six months, during which time Claimant accumulated huge medical expenses. Only then did Employer decide to deny compensability and file an answer asserting Claimant's injury was not work-related. Employer's answer did not refer to evidence on which it relied, and the only evidence Employer adduced at trial on the compensability issue was a medical report-dated two weeks after Employer's denial of compensability—by an expert who apparently had not even reviewed Pinnacle or Dr. Washburn's medical records. Shortly after its denial of compensability, Employer entered into a settlement with Claimant without notice to Providers, without a finding of compensability, and without making any provision for payment of Claimant's pending bills. In the face of such undisputed evidence, the workers' compensation court's finding that Employer/CompSource acted reasonably in its denial of Claimant's claim-and its further denial of any relief to Providers under § 30–was an abuse of discretion and requires reversal.

■ ¶ 22 This holding is consistent with the tenor and purpose of the Workers' Compensation Act, which was designed to assure that workers are compensated for their injuries and that medical providers are promptly paid by responsible employers.[15] Once a claim has been filed, the workers' compensation court has primary jurisdiction over the matter and the employee stands immune from suit in district court for medical fees until such time as the workers' compensation court disposes of the claim, either by imposing liability on the employer or "absolving it from the statutory burden" of liability for an injured employee's health care costs. *Aguirre*, 1996 OK 133 at ¶ 9, 930 P.2d at 218. That liability, if an injury is found compensable, is wholly that of the employer. Thus, Pinnacle, though indisputedly acting for its own benefit as well, also rendered a benefit to Claimant by reducing his liability for what would otherwise be a substantial medical expense for his injury.

■ ¶ 23 Clearly, Employer/CompSource was entitled to question the amount of those expenses and require payment of only those amounts which were reasonable and medically necessary. *Bond v. Fox Bldg. Supply*, 1992 OK 19, 826 P.2d 599. However, it was not entitled to unjustifiably delay and withhold payment on its admitted liability while Providers continued to bear the cost and care of Employer's injured worker to its detriment. While employers are entitled and encouraged to enter into settlements with injured workers and resolve compensation disputes without additional litigation costs, there is nothing in our law suggesting that this policy should be followed at the expense of health and medical providers.

■ ¶ 24 Here, Providers did not receive the full amounts deemed reasonable by the workers' compensation court until almost three years after they began a course of treatment and care for Claimant, with Employer's knowledge and consent. In *City of Duncan v. Tulsa Spine Hospital*, 2008 OK CIV APP 70, 190 P.3d 1197, we held that the

15. A proceeding by a medical provider to recover for its services is ancillary to a claimant's proceeding to recover for work-related injury. *O'Mara v. Andrews*, 1930 OK 520, 293 P. 257. In fact, "[i]t is only after a claim has been filed, and the [workers' compensation] court has adjudged the injury as work-related, that a medical care provider may seek reimbursement in an ancillary [workers' compensation] proceeding for medical services rendered" under the Workers' Compensation Act. *Baptist Med. Ctr. of Okla., Inc. v. Aguirre*, 1996 OK 133, n. 9, 930 P.2d 213, 218; *see also* Workers' Compensation Court Rule 50(B), 12 O.S. Supp.2006 ch. 4, app.

workers' compensation court correctly removed the limits of the Fee Schedule after an employer failed to pay a hospital's bill within 60 days, finding that the employer's actions were unreasonable "in large part on the additional finding Employer authorized Claimant's treatment and surgery, but failed to communicate this to Administrator so payment could be made." Employer/CompSource acted in a similarly unreasonable manner in this case, and we find it liable for the total cost of the proceedings, including both Providers' reasonable attorney fees, calculated on a quantum meruit basis.

### Interest Under 85 O.S.2001 § 42 *and* 12 O.S. Supp.2005 § 727.1

¶ 25 The Oklahoma Supreme Court has long held that a compensation award "is not a judgment" and that authority to award interest, if such award is to be made at all, must be found within the Workers' Compensation Act. *See Special Indem. Fund v. Horne,* 1954 OK 293, 276 P.2d 240. Providers argue they are entitled to interest at least from the date that the workers' compensation court found that Claimant sustained a work-related injury, i.e., April 5, 2006, to accrue on the amounts the court ultimately found due and owing less any sums already paid.

¶ 26 Providers rely on 85 O.S.2001 § 42, which states, in pertinent part:

> Any compensation awarded and all payments thereof directed to be made by order of the Court, except in the case of an appeal of an award ... shall bear interest at the rate of eighteen percent (18%) per year from the date ordered paid by the Court until the date of satisfaction.

¶ 27 The language of this statute clearly requires that a compensation "award" be entered and "ordered paid" before interest will begin to accrue, and neither occurred in the April 2006 order by the workers' compensation court. We reject this argument.

¶ 28 Providers alternatively suggest that interest is payable pursuant to 12 O.S. Supp. 2005 § 727.1. That statute provides for post-judgment and pre-judgment "interest on judgments of court(s) of record" and on "un-paid judgments," after January 1, 2005. Providers refer us to no authority suggesting that these statutes, which clearly apply to "judgments" and state district courts, authorize an award of interest based on a finding of compensability in the workers' compensation court. Thus, we also reject this argument, and sustain the workers' compensation court's order denying interest.

### CONCLUSION

¶ 29 Under the Workers' Compensation Act, a provider who is awarded the full amount authorized by the Fee Schedule has "prevailed in full" for purposes of entitlement to an attorney fee pursuant to 85 O.S. Supp. 2005 § 14(F)(5). Here, Dr. Washburn "prevailed in full" because she was awarded the MAR as determined by the Court Administrator, and the worker's compensation court erred in denying her attorney fees under § 14(F)(5). Pinnacle did not "prevail in full" because it was not awarded the full MAR, and the worker's compensation court correctly denied its request for attorney fees under § 14(F)(5).

¶ 30 However, the workers' compensation court abused its discretion in finding that Employer and its insurance carrier "reasonably denied payment of benefits" to Claimant and to Providers. Employer and CompSource acted unreasonably and are liable for the "total cost of the proceedings" pursuant to 85 O.S.2001 § 30, including Providers' costs and reasonable attorney fees, calculated on a quantum meruit basis. The workers' compensation court correctly denied Providers' request for interest prior to its March 2008 order setting forth the amounts owed to Providers. Accordingly, we sustain in part, reverse in part, and remand for a determination of Providers' costs and attorney fees.

¶ 31 SUSTAINED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

RAPP, C.J., and BARNES, J., concur.